In re Stephen C. OKOSISI and Susan O. Nwogbe, Debtors.

No. BK–S–09–27113–BAM.

United States Bankruptcy Court, D. Nevada.

May 16, 2011.

Corey B. Beck, Las Vegas, NV, for Debtor.

## OPINION

BRUCE A. MARKELL, Bankruptcy Judge.

### I. Introduction

Stephen C. Okosisi and Susan O. Nwogbe (the *"Debtors"*) filed for chapter 13 bankruptcy after having previously received a discharge in chapter 7.[1] The Debtors admit they are not eligible for a discharge in this chapter 13 case; however, they are still seeking to reorganize through bankruptcy. Earlier in the case, the court granted the Debtors' motion to avoid the second priority, and wholly unsecured, lien on their primary residence. They now seek to confirm a plan which incorporates this avoidance. The chapter 13 bankruptcy trustee opposes confirmation.

The court here determines: (1) that the Debtors, on these specific facts and so long as the order confirming their plan is effective, are permitted by the Bankruptcy Code to permanently avoid the junior lien on their primary residence; and (2) the instant chapter 13 case was commenced in good faith. Therefore, the court will confirm the Debtors' chapter 13 plan.

### II. Background

The Debtors filed for bankruptcy under chapter 13 on September 14, 2009. According to the court's ECF System, sixteen other chapter 13 cases were filed in this district on that day, and over 500 chapter 13 bankruptcies were filed in this district during September 2009. What makes the Debtors' case different than the majority of other chapter 13 cases is that the Debtors received a discharge under chapter 7 less than two years prior to filing.[2] Other than this wrinkle, nothing about this case appears to be anything other than typical.

The Debtors addressed a substantial amount of unsecured debt through their previous chapter 7 case, almost all of which was associated with a failed restaurant. The Debtors' purpose for seeking relief in this chapter 13 case was to address the arrearages and outstanding liens on their primary residence and to pay priority tax claims over time. According to the schedules filed with their petition, their primary residence had an estimated value of $342,000 at the time of filing. This property was encumbered by a first priority mortgage in favor of Citimortgage for $383,000 and a second priority mortgage in favor of Nevada State Bank for $302,125. Citimortgage's claim was thus undersecured, and Nevada State Bank's claim was wholly unsecured.

The Debtors filed a motion to avoid the lien attributable to Nevada State Bank's second priority mortgage on November 25, 2009. This motion was unopposed and was granted on February 4, 2010. The current version of the Debtors' chapter 13 plan was filed on June 23, 2010. Although the chapter 13 trustee opposed the plan, Nevada State Bank did not. As no facts are in dispute, the court took the matter under submission to decide the legal issues.

1. Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

2. The Debtors obtained a chapter 7 discharge on September 29, 2008 and filed the current bankruptcy case on September 14, 2009. The Debtors' present chapter 13 case is what is colloquially known as a "chapter 20."

### III. Lien Avoidance and the Primary Residence in Chapter 13

The Bankruptcy Code provides for different treatment of claims depending on whether the particular claim is secured or unsecured. When the collateral securing the claim is worth less than the amount of debt, a debtor is able to split an otherwise secured claim into a secured and an unsecured claim. *See* 11 U.S.C. § 506(a)(1) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim."). After this bifurcation, the creditor has a secured claim to the extent of the value of its collateral and an unsecured claim as to that portion of the debt which exceeds the collateral's value. *Id.*

 "Secured claim" is a term of art within the Bankruptcy Code, and means something different than it does for a creditor to have a security interest or lien outside of bankruptcy. Furthermore, the defined term "claim" means something different than does the term of art "secured claim." *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 330–31, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (finding that a claim, whether secured or unsecured, is defined by Section 101(5), while the subset of claims defined as secured claims are "determined by application of [Section] 506(a)"). Outside of bankruptcy, if a creditor has a valid security interest, regardless of the collateral's value, it may be thought of as a secured creditor. However, in bankruptcy, a creditor is only a secured creditor if its claim is so classified. If the claim is not so classified, the once-secured creditor will have an unsecured claim and will thus be an unsecured creditor for purposes of the bankruptcy case.

However, a chapter 13 creditor enjoys additional protection if the collateral securing its claim is the debtor's primary residence. 11 U.S.C. § 1322(b)(2) (A chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence ..."). Because Section 1322(b) prohibits the modification of the "rights" of the secured creditor, as distinguished from the modification of the secured creditor's "claim," the chapter 13 debtor cannot avail themselves of Section 506(a) to reduce the undersecured claim to the primary residence's fair market value. *See Nobelman*, 508 U.S. at 329–32, 113 S.Ct. 2106. However, the antimodification protection of Section 1322(b)(2) only operates to benefit creditors who may be classified as secured creditors *after* operation of Section 506(a). *See Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220, 1226 (9th Cir. 2002).

 In order to determine whether a secured creditor qualifies for the antimodification protection of Section 1322(b)(2), courts first determine whether a creditor has a secured claim under Section 506(a). *Id.* (citing *Nobelman*, 508 U.S. at 328, 113 S.Ct. 2106). If the creditor is the holder of a secured claim in bankruptcy, as determined by application of Section 506(a), then "the rights of such a creditor [are] protected," and "in order to protect such rights," the antimodification clause applies to the entire claim of the creditor. *Id.* (citing *Nobelman*, 508 U.S. at 328, 113 S.Ct. 2106).

If, however, after applying Section 506(a) to determine the status of the claim, the claim is determined to be wholly unsecured, the rights of the "creditor holding only an unsecured claim may be modified

under [Section] 1322(b)(2)," and the creditor's lien may be avoided, notwithstanding the antimodification protection provided for in Section 1322(b)(2). *Id.*, at 1227. This logic is "compelled by the Supreme Court's decision in *Nobelman*," and has been embraced by each of the six circuit courts that have considered this question. *Zimmer*, 313 F.3d at 1227; *In re Lane*, 280 F.3d 663, 667–69 (6th Cir.2002); *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122, 126 (2nd Cir.2001); *Tanner v. FirstPlus Fin., Inc. (In re Tanner)*, 217 F.3d 1357, 1359–60 (11th Cir.2000); *In re Bartee*, 212 F.3d 277, 288, 295 (5th Cir. 2000); *McDonald v. Master Fin. Inc. (In re McDonald)*, 205 F.3d 606, 611 (3rd Cir. 2000). Bankruptcy Appellate Panels have also reached this same result. *Griffey v. U.S. Bank (In re Griffey)*, 335 B.R. 166, 167–68 (10th Cir. BAP 2005); *In re Mann*, 249 B.R. 831, 836 (1st Cir. BAP 2000).

Applied to the Debtors' case, the Debtors' unopposed motion to avoid, supported by an appraisal, stated that the first priority lien on their principal residence exceeded the value of the property. This court agreed and entered an order preliminarily avoiding the lien. Thus, applying Section 506(a) as interpreted by *Nobelman* and *Zimmer* to Nevada State Bank's claim, the claim was wholly unsecured and should be so classified in the Debtors' plan. Following further the rationale of *Nobelman* and *Zimmer*, Nevada State Bank's claim did not qualify for the antimodification protection of 1322(b)(2). This potential lien avoidance, initially at least, is not affected by the no-discharge nature of the Debtors' case. The issue, then, is determining what affect this lien avoidance has on the chapter 13 plan given the no-discharge nature of the case and the lasting effect, if any, of the lien avoidance at plan completion.[3]

### IV. Lien Avoidance and the No-discharge Chapter 13

#### A. In a Typical Chapter 13 Case, Lien Avoidance Is Permanent upon Discharge

The typical chapter 13 debtor is granted a discharge at the end of their payment plan. 11 U.S.C. § 1328 (granting discharge "as soon as practicable after completion by the debtor of all payments under the plan"). Unlike the chapter 7 discharge, which is typically granted relatively quickly, the chapter 13 debtor must, in most situations, successfully complete all plan payments before they may be granted a discharge. *Compare* 11 U.S.C. § 727 *with* 11 U.S.C. § 1328. The requirement to make all plan payments can represent a serious burden to the chapter 13 debtor.[4]

---

**3.** While the trustee does not argue that the Debtors are ineligible to file a chapter 13 case because of their previous case under chapter 7, implied within the trustee's argument is the idea that most of the restructuring tools typically available in chapter 13 should be unavailable in this case simply because of their previous chapter 7 bankruptcy.

Congress has determined that some types of repeat bankruptcy filings are completely inappropriate, and thus the debtor is ineligible to file another bankruptcy case for a certain period of time. *See, e.g.,* 11 U.S.C. § 109(g). Congress has also limited the availability of the discharge to repeat bankruptcy debtors. *See, e.g.,* 11 U.S.C. § 727(a); 11 U.S.C. § 727(a)(9). However, the absence of a blanket "prohibition on serial filings of Chapter 7 and Chapter 13 petitions, combined with the evident care with which Congress fashioned these express prohibitions," is convincing evidence "that Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization" to previous chapter 7 debtors. *Johnson v. Home State Bank*, 501 U.S. 78, 87, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). The Debtors' chapter 20 bankruptcy is permissible under the Code, and they may take advantage of all available chapter 13 restructuring tools.

**4.** Indeed, many chapter 13 bankruptcy debtors fail either to achieve confirmation of a

For those debtors who successfully confirm and complete a chapter 13 plan, the chapter 13 discharge operates as a permanent injunction against the collection of debts to the extent of the debtor's personal liability on the debt. 11 U.S.C. § 524. It is important to note, however, that just because a debtor receives a discharge in bankruptcy, the debt does not simply vanish. The debt remains, but personal liability on the debt has been removed. *Id.* Liens on property of the chapter 13 bankruptcy estate, if not properly addressed through the chapter 13 plan, remain on the encumbered property, and once the automatic stay is lifted by entry of the discharge, the creditor is free to exercise any nonbankruptcy collection remedies attributable to its valid security interest in the property. In the normal chapter 13 case, when the debtor avoids the lien through a confirmed plan and also receives a discharge after completing all plan payments, the debt also remains; however, both the personal liability for the debt and the lien allowing the creditor to proceed against the property have been removed, making the debt uncollectible.

Liens, other than those on a debtor's primary residence, are often avoided through the chapter 13 plan. 11 U.S.C. § 1322(b)(2). Section 1322(b)(2) allows a chapter 13 debtor to "modify the rights of holders of secured claims ... and of unsecured claims." Thus, it is permissible for a debtor to provide that a lien will be avoided through the chapter 13 plan, making such avoidance permanent upon successful completion of the chapter 13 plan and so long as confirmation of the plan is not subsequently set aside. This is the result that was approved of in *Zimmer*,

313 F.3d at 1226, and is exactly what the Debtors' plan of reorganization provides.

It is easy, then, to see why debtors who wish to save their homes choose chapter 13 and attempt to avoid a wholly unsecured second priority lien. However, any permanence of this action is not available until all plan payments have been completed. If the debtor fails to complete all plan payments, the case will be dismissed or converted to one under chapter 7. 11 U.S.C. § 1307 (providing for conversion or dismissal, "whichever is in the best interests of creditors and the estate, for cause"). One consequence of this dismissal or conversion is that any lien avoidance that was accomplished will be undone. 11 U.S.C. § 349(b)(1); *Dewsnup v. Timm*, 502 U.S. 410, 417–18, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Thus, in the typical chapter 13 case, lien avoidance cannot be permanent until all plan payments are made.

### B. Characterizing Mortgage Debt in a Chapter 20 Bankruptcy

As discussed above, bankruptcy affects the availability of different collection remedies, without affecting the existence of the debt itself. Indeed, even after the bankruptcy discharge has been granted, so long as a viable means of collection remains, such as the pursuit of collateral for the discharged debt, a creditor will be able to collect some, if not all, of the debt.

The security for a debt in real property is typically evidenced by a mortgage or deed of trust on the property. These security devices give the creditor the right to proceed against that specific property in satisfaction of the underlying debt, and a

---

chapter 13 plan or to successfully complete all plan payments and, thus, do not receive a discharge of their debts. *See Till v. SCS Credit Corp.*, 541 U.S. 465, 493 n. 1, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004) (Scalia, J., dis-

senting) (citing Scott F. Norberg, *Consumer Bankruptcy's New Clothes: An Empirical Study of Discharge and Debt Collection in Chapter 13*, 7 Am. Bankr.Inst. L.Rev. 415, 440–41 (1999)).

properly recorded mortgage or deed of trust gives the creditor priority over subsequent creditors who take an interest in that land, whether that interest be a mortgage, deed of trust, judgment lien, mechanic's lien, or any other type of security interest. This stands in contrast to the unsecured creditor, who extends credit to the borrower and takes no security interest in any of the borrower's property. If an unsecured creditor sues on the debt, they must sue the borrower personally, and any judgment won will be satisfiable only from the debtor's nonexempt assets.

There is a third type of debt of importance to chapter 20 debtors: nonrecourse debt. Nonrecourse debt exists when the creditor has contractually given up its right to satisfy the indebtedness personally against the borrower and, in the event of nonpayment by the borrower, agrees to seek collection of the debt only through foreclosure of its collateral.[5] This species of debt can also exist if a debtor purchases property subject to an existing lien.

 The bankruptcy discharge creates something akin to nonrecourse debt. After the discharge is granted, personal liability on a debt is removed. 11 U.S.C. § 524(a)(2) (Discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt *as a personal liability of the debtor.*") (emphasis added). However, the discharge itself has no affect on liens, and the creditor is free to foreclose upon the case's conclusion without violating the discharge injunction. *Johnson,* 501 U.S. at 84, 111 S.Ct. 2150 ("[A] bank-

ruptcy discharge extinguishes only one mode of enforcing a claim-namely, an action against the debtor *in personam*— while leaving intact another—namely, an action against the debtor *in rem.*"). Any deficiency that remains after the creditor forecloses on its liens and sells the property continues to exist, but is an uncollectible debt. Thus, following the discharge, the debt becomes nonrecourse debt. *Id.* at 86, 111 S.Ct. 2150 ("Insofar as the mortgage interest that passes through a Chapter 7 liquidation is enforceable only against the debtor's property, this interest has the same properties as a nonrecourse loan."); *In re Hill,* 440 B.R. 176, 182 (Bankr. S.D.Cal.2010).

Generally speaking, chapter 13 provides a means to address a wide variety of claims, including claims which are nonrecourse debt. 11 U.S.C. § 102(2) (" 'claim against the debtor includes claim against property of the debtor' "). Even though the chapter 13 debtor faces no personal liability on the debt, the debtor may use Section 506(a) to determine that the claim is not supported by the value of any collateral, avoid the lien through the chapter 13 plan, and thereby treat the debt as unsecured debt. *In re Metz,* 820 F.2d 1495, 1498 (9th Cir.1987); *In re Akram,* 259 B.R. 371, 374–75 (Bankr.C.D.Cal.2001). Once the lien is so avoided, the unsecured claim that is represented by this nonrecourse debt becomes an unsecured claim in the bankruptcy case. *Hill,* 440 B.R. at 182; *In re Tran,* 431 B.R. 230, 237 (Bankr. N.D.Cal.2010); 11 U.S.C. § 506(a). A creditor who asserts this unsecured claim by filing a proof of claim is further entitled to participate in the pro-rata distribution

---

**5.** By example, if a creditor agrees to finance the purchase of a certain parcel of real estate through a nonrecourse loan, and the borrower subsequently defaults on the obligation, the creditor will be able to foreclose on the land as allowed by state law, but the creditor's recovery will be limited to the proceeds of the foreclosure sale. In the event of a deficiency, the creditor will not be able to proceed personally against the borrower, and this deficiency will represent an uncollectible debt.

made to general unsecured creditors, if any. *Hill,* 440 B.R. at 183; *Akram,* 259 B.R. at 374.

### C. Propriety of Lien Avoidance in Chapter 20 Cases

■ Some courts have concluded that a chapter 13 debtor is prohibited from confirming a chapter 13 plan which removes a lien from real property when the debtor has previously filed a chapter 7 case and received a discharge. *In re Gerardin,* 447 B.R. 342, 347–48 (Bankr.S.D.Fla.2011) (holding that chapter 20 debtor could not avoid lien because of ineligibility for discharge); *In re Fenn,* 428 B.R. 494, 500 (Bankr.N.D.Ill.2010) (holding that by virtue of Section 1325(a)(5) holder of secured claim retains the lien until the underlying debt is paid in full); *In re Jarvis,* 390 B.R. 600, 605–06 (Bankr.C.D.Ill.2008) (finding discharge a necessary prerequisite to permanency of lien avoidance); *In re Lilly,* 378 B.R. 232, 236–37 (Bankr.C.D.Ill.2007) (holding that by virtue of Section 1325(a)(5) holder of secured claim retains the lien until the underlying debt is paid in full). The court respectfully declines to reach the same result on the facts of this case, and the remainder of this memorandum explains why.

Turning first to the statutory text, Section 1325(a)(5) provides that:

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that—

(I) the holder of such claim retain the lien securing such claim until the earlier of—

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) discharge under section 1328; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

11 U.S.C. § 1325(a)(5).

Courts believing that this statute prohibits lien avoidance in chapter 20 cases have focused on Section 1325(a)(5)(B)(i). "Code section 1325(a)(5) requires that [the chapter 13 plan] provide that the holder of a secured claim retain the lien securing the claim until the earlier of the payment of the underlying debt determined under nonbankruptcy law or discharge under section 1328." *Fenn,* 428 B.R. at 500. If the debtor is not eligible for a chapter 13 discharge due to a previous chapter 7 discharge, the avoidance cannot occur, because lien "avoidance occurs at discharge."[6] *Id.*

■ Considering the statutory text, it would seem that a prerequisite to the application of Section 1325(a)(5)(B) is that the claim first be classified as "an allowed secured claim" within the meaning of Section 1325(a)(5).[7] Under *Nobelman* and

---

**6.** *Tran* considered Section 1325(a)(5)(B)(i)(II), and determined that because a chapter 20 case is not converted or dismissed at the successful conclusion of plan payments, Section 1325(a)(5) is not implicated. *Tran,* 431 B.R. at 235. This discussion is somewhat problematic, however, because Sections 1325(a)(5)(B)(i)(I) and 1325(a)(5)(B)(i)(II) are joined by the conjunctive "and" rather than the alternative "or." Therefore, if Section

1325(a)(5)(B)(i) is implicated, both subparts must be satisfied. The *Tran* court does not explicitly state that Section 1325(a)(5) is not implicated when the claim is wholly unsecured, although it does appear to reach that result. *Id.* at 236.

**7.** When undertaking statutory interpretation, this court starts with "the presumption ... that Congress intended the accepted and

*Zimmer,* as discussed above, when a creditor is wholly unsecured after application of Section 506(a), the creditor has only an unsecured claim for purposes of Section 1322(b)(2). The creditor is not the holder of a secured claim, and as such, Section 1325(a)(5), which, by its language applies only to secured claims, does not apply to the wholly unsecured creditor.

*Hill,* when considering this issue, reached this very conclusion. After considering many of the same decisions that this court has considered, and after the same analysis of the statutory text that this court has engaged in, the court found that Section 1325(a)(5) "has no applicability to unsecured claims, which are separately governed by the confirmation requirements of [Section] 1325(a)(4)." *Hill,* 440 B.R. at 183. The application of "[c]ontrolling Ninth Circuit precedent" required that the creditor's claim be treated as an unsecured claim for purposes of Section 1322. *Id.* "To remain true to the holding of *Zimmer* ... [the creditor's] unsecured claim cannot logically be treated differently under [Section] 1325 than it is treated under [Section] 1322." *Id.*

This court agrees that "[a] creditor who [does] not hold a secured claim pursuant to [Section] 506(a)" does not have the "right to other benefits of 'secured status in the bankruptcy proceeding.'" *Id.* (quoting *United States v. Snyder,* 343 F.3d 1171, 1179 (9th Cir.2003)); *see also In re Fair,* 450 B.R. 853, 2011 WL 1486021, *3 (E.D.Wis.2011) (holding that because creditor's claim was unsecured after application of Section 506(a) and because Section 1325(a)(5) "does not apply to unsecured claims," creditor's lien could properly be avoided); *In re Davis,* 447 B.R. 738, 746 (Bankr.D.Md.2011) (holding that if "claim is not an allowed secured claim pursuant to Section 506(a), by its terms, Section 1325(a)(5)(B) is inapplicable"); *In re Frazier,* —— B.R. ——, 2011 WL 1206198, *6 (Bankr.E.D.Cal.2011) (holding that where there was "no value in the collateral to secure the claim" after application of Section 506(a), creditor did not hold a secured claim and therefore lacked "basis for asserting rights under 11 U.S.C. § 1325(a)(5)"). Accordingly, these unsecured creditors' rights are subject to modification through the chapter 13 plan—pursuant to Section 1322(b)(2)—and do not qualify to be treated as secured creditors for purposes of Section 1325(a)(5).[8]

---

plain meaning of the words it used." *In re Shat,* 424 B.R. 854, 864 (Bankr.D.Nev.2010). When "discerning congressional intent" the court's "starting point ... is the existing statutory text.... It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. United States Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004), (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (internal quotation marks omitted), in turn quoting *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), in turn quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). "In conjunction with this general examination, ... a court should also examine, in the case of an integrated and cohesive statute such as the Bankruptcy Code, how that code uses or employs the words or phrase in dispute." *Shat,* 424 B.R. at 865. (citing *Am. Bankers Ass'n v. Gould,* 412 F.3d 1081, 1086 (9th Cir.2005) (citations omitted)).

8. Nevada State Bank did not submit a claim in this case, nor did they object to the plan. The Debtors may successfully avoid Nevada State Bank's second priority lien through their chapter 13 plan.

Section 506(a) does not determine the allowed amount of a claim, only whether the claim is to be treated as secured or unsecured. 11 U.S.C. § 506(a). Given the lien avoidance order, if Nevada State Bank had timely submitted a claim in this case, under Section 502(a), that claim would have been

*D. In a No-discharge Chapter 13, Lien Avoidance is Permanent upon Completion of the Plan[9]*

■ Having determined that nothing in the Bankruptcy Code prevents the chapter 20 debtor from avoiding a lien, the court now turns to the question of when this avoidance becomes permanent. Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act (*"BAPCPA"*) by Congress in 2005, chapter 13 cases could end in one of three ways: conversion, dismissal, or discharge. *In re Leavitt,* 171 F.3d 1219, 1223 (9th Cir.1999). Furthermore, actions taken to avoid a lien are undone if a case is dismissed or converted prior to the successful completion of all plan payments, as discussed above.

However, BAPCPA added Section 1328(f), and thus opened up the possibility of a fourth option, the completion of all plan payments without a discharge. In this post-BAPCPA regime, lien avoidance actions are still undone if the chapter 13 case is converted or dismissed, as the operation of those Code provisions was not changed. In cases where the chapter 13 debtor is not eligible for a discharge because of Section 1328(f), the proper determination of the permanency of any action to avoid a lien is less settled.

At the successful completion of all payments in a no-discharge chapter 13 case, no order discharging the debtor will be entered because the debtor is not eligible for a discharge. 11 U.S.C. § 1328(f). The court finds that in this situation the proper result is for the court to close the case without discharge. 11 U.S.C. § 350(a) ("After an estate is fully administered ..., the court shall close the case."); FED. R. BANKR.P. 5009 ("If in a ... chapter 13 case the trustee has filed a final report ... and certified that the estate has been fully administered ... there shall be a presumption that the estate has been fully administered."); *Tran,* 431 B.R. at 235.

The enactment of BAPCPA created a fourth option for the end result of a chapter 13 case, and *Leavitt,* as a result, is now incomplete.[10] To the available options of

---

"deemed allowed, unless a party in interest" were to object and would have been an unsecured claim. 11 U.S.C. § 502(a). A creditor in similar circumstances as Nevada State Bank would be entitled to share in the pro-rata distribution to general unsecured creditors, provided it submitted a claim and such claim was ultimately allowed.

However, Nevada State Bank has not filed a proof of claim in this proceeding, and the bar date for filing claims has passed. Therefore, in this case, Nevada State Bank does not have an allowed claim, FED. R. BANKR.P. 3002(a); 11 U.S.C. § 502(a), and is not entitled to share in any pro-rata distribution made to unsecured creditors. *See* FED. R. BANKR.P. 3021.

9. Other courts considering this issue have concluded that a debtor may not employ 506(d) to avoid the lien, as this would constitute an end-run around the Supreme Court's holding in *Dewsnup. Gerardin,* (finding lien modification under Section 506(d) improper

if claim it secures is a secured claim); *Hill,* 440 B.R. at 181 (holding that allowing lien avoidance solely under Section 506(d) "would run afoul of *Dewsnup* "); This court agrees that 506(d) may not be used independently of another code section to avoid a lien. However, this interpretation in no way affects the Ninth Circuit requirement that Section 506(a) be used to sort claims based on secured or unsecured status prior to application of Sections 1322 and 1325. *See Zimmer,* 313 F.3d at 1226.

10. While other courts have determined that dismissal is the appropriate outcome upon the completion of plan payments, this is inappropriate because dismissal of a chapter 13 case is only to occur either voluntarily or for cause. 11 U.S.C. § 1307. Because dismissal is addressed in Section 1307, and because the successful completion of all plan payments does not constitute cause for dismissal under subsection (c) of section 1307, it is inappro-

discharge, dismissal, and conversion, the fourth option of closed without discharge must now be added.

Because the no-discharge case is closed without discharge, rather than dismissed, the code sections that reverse any lien avoidance actions contained within a chapter 13 plan upon conversion or dismissal are not implicated, and, thus, do not act to prevent the permanence of the lien avoidance. *See* 11 U.S.C. § 349(b)(1); *Dewsnup*, 502 U.S. at 417–18, 112 S.Ct. 773. Once a debtor successfully completes all plan payments required by a chapter 13 plan, the provisions of the plan become permanent, and the lien avoidance is, similarly, permanent.[11]

Support for this conclusion is found in Section 1327, which governs the effect of plan confirmation. Under Section 1327, a confirmed plan is binding "on the debtor and each creditor ... whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). Furthermore, confirmation of a chapter 13 plan "vests all of the property of the estate in the debtor," and this property vests in the debtor "free and clear of any claim *or* interest of any creditor provided for by the plan." *Id.* (emphasis added).

■ This language refers to both claims and interests. A claim, whether secured or unsecured, is defined by the Bankruptcy Code as a right to payment. *See* 11 U.S.C. § 101(5). While "interest" is not a defined term, because it is included in the same section as claim, it must

have a meaning distinct from the defined term "claim." In the context of chapter 13, which is concerned primarily with addressing and reorganizing a creditor's rights to repayment and security interests in a debtor's property, interest encompasses liens on real property. *See* 8 Collier on Bankruptcy ¶ 1327.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011). Therefore, liens avoided through a confirmed chapter 13 plan remain avoided so long as the plan and the order confirming it remain in effect. This is because an order confirming a chapter 13 plan is binding, and res judicata precludes a creditor from bringing a collateral attack of that order. *Brawders v. Cnty. of Ventura (In re Brawders)*, 503 F.3d 856, 867 (9th Cir. 2007) (citing *Multnomah Cty. v. Ivory (In re Ivory)*, 70 F.3d 73, 75 (9th Cir.1995)).

■ This res judicata effect, and, thus, the treatment afforded to a creditor under a confirmed chapter 13 plan, can only be undone if plan confirmation is revoked, 11 U.S.C. § 1330, or if the case is converted or dismissed.[12] 11 U.S.C. § 349(b); *see also Nash v. Kester (In re Nash)*, 765 F.2d 1410, 1413 (9th Cir.1985). As discussed above, assuming all plan payments are made, confirmation will not be revoked, and the case will not be converted or dismissed. It will be closed, and the res judicata effect of the confirmed chapter 13 plan will remain in place.

*E. The Misnomer of the So-called "De-facto Discharge"*

There is concern that allowing debtors in a no-discharge chapter 13 case to take

---

priate for the case to be dismissed upon the successful completion of all plan payments.

**11.** Or at least as permanent as the order confirming the plan.

In the Debtors' present chapter 20 case, because personal liability on the claim was already extinguished by the discharge entered in the prior chapter 7 case, a discharge is

unnecessary to prevent subsequent in personam collection actions. *Hill*, 440 B.R. at 182; *Tran*, 431 B.R. at 237.

**12.** The treatment might also be affected by any successful challenge to the confirmation order under Bankruptcy Rule 9024, which incorporates Civil Rule 60.

advantage of chapter 13 restructuring tools, and allowing the changes effectuated thereby to become permanent on the successful completion of the chapter 13 plan, amounts to a "de-facto discharge." The argument continues that because Section 1328(f) prevents discharge in cases such as this, and any action affecting the debtor's debt liability or structure operates as a discharge, Congress could not have intended to allow this practice.

Section 1328(f) only prohibits discharge. Because Section 1328(f) is clear, the court declines any invitation to guess Congress's intention when it passed BAPCPA. If Congress's goal was to limit the operation of Sections 1322(b)(2) and 1327 as well as discharge, it could have explicitly drafted the statute to achieve this goal. As it did not, the court will not read any further restrictions into the Bankruptcy Code.

The Debtors filed for chapter 13 having received a chapter 7 discharge within the two years prior, and concede that they are ineligible for a discharge in the present case. They seek to avoid the second lien of creditor Nevada State Bank through their chapter 13 plan, as allowed by the Bankruptcy Code. The Debtors are seeking to confirm a chapter 13 plan that reflects this lien avoidance and makes it permanent upon successful completion of their chapter 13 plan. Because the Code allows debtors who are not eligible for a discharge under Section 1328(f) to take advantage of the other restructuring tools contained within chapter 13, this action is proper under the Code.

Some may argue that allowing bankruptcy debtors to take advantage of these restructuring tools, even when ineligible for a discharge, allows the evasion of "limits that Congress intended to place on these remedies." *Johnson*, 501 U.S. at 87, 111 S.Ct. 2150. However, "Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously … filed for Chapter 7 relief." *Id.* Furthermore, this argument "fails to apprehend the significance of the full range of Code provisions designed to protect Chapter 13 creditors." *Id.; see also Fair*, 2011 WL 1486021 at *3 (finding "Congress did not intend to prevent lien stripping through [Section] 1328(f)(1), and it is inaccurate to characterize lien stripping as a de facto discharge under the bankruptcy code"). A bankruptcy court can only confirm a chapter 13 plan if it complies with all the requirements contained within Section 1325. While serial filings may implicate "any or all of" the provisions contained within Section 1325, *Johnson*, 501 U.S. at 88, 111 S.Ct. 2150, these provisions, to which the court now turns, are adequate to safeguard the rights of chapter 13 creditors.

### V. *Good Faith*

 The court has determined that the Debtors' plan complies with Sections 1322(b)(2) and 1325(a)(5). The court must also consider the chapter 13 trustee's allegation of bad faith.[13] One factor that must be present before a chapter 13 plan can be confirmed is that the "plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). Good faith in the chapter 13 context is to be determined on a case by case basis, after an examination of the totality of the circumstances. *In re Warren*, 89 B.R. 87,

---

**13.** Even if bad faith were not being alleged by the Trustee, this court has an independent duty in chapter 13 cases to ensure that all elements of Section 1325 are met before it enters an order confirming a chapter 13 plan. *United Student Aid Funds, Inc. v. Espinosa*, —— U.S. ——, 130 S.Ct. 1367, 1381, 176 L.Ed.2d 158 (2010) (finding that "bankruptcy courts have the authority—indeed, the obligation—to direct a debtor to conform his plan to the requirements of [the Bankruptcy Code]").

93 (9th Cir. BAP 1988). The factors affecting a finding of good faith that are relevant to the analysis in the present case are the same that were relevant to the court in the *Hill* case, and these will be discussed in detail. *Id.; Hill,* 440 B.R. at 184–85.[14]

### A. The Debtors Have a Need for Bankruptcy Other than the Lien Avoidance Action

The *Tran* court, after finding that lien avoidance in a chapter 20 was permissible, nevertheless dismissed one of the subject cases after finding that the debtor's sole purpose in filing the case was to "unfairly manipulate the Bankruptcy Code to skirt the Supreme Court's holding in *Dewsnup,*" through the lien avoidance action. *Tran,* 431 B.R. at 238. This is not the situation here. In the present case, the Debtors are insolvent. According to the Debtors' chapter 13 plan, they have an arrearage of $14,243.87 on their primary residence that will be cured through the chapter 13 plan. The Debtors' chapter 13 plan further addresses priority claims such as federal taxes in the amount of $7,891.94 owed to the Internal Revenue Service and sales taxes in the amount of $13,151.43 owed to the Nevada Department of Taxation. According to the Debtors' Chapter 13 Statement of Current Monthly Income, the debtors have a negative disposable income. However, in an effort to cure the arrearage on their home, to continue paying debt attributable to their automobiles, and to address their outstanding tax liability, the Debtors' chapter 13 plan obligates them to make

monthly payments of $850.00.[15] The Debtors have a valid bankruptcy purpose in filing the present chapter 13 case, as the plan accomplishes a reorganization that was not possible in their previous chapter 7 and "represents their best effort[s] to pay creditors." *Hill,* 440 B.R. at 184 (citing *In re Villanueva,* 274 B.R. 836, 841 (9th Cir. BAP 2002)).

### B. The Debtors Acted Equitably in Proposing the Plan

The Debtors filed their previous chapter 7 case to address substantial debt associated with a failed restaurant. The Debtors filed the present case to reorganize the remaining priority unsecured debt and to address arrearages on their primary residence. The Debtors' plan calls for them to pay $43,352.00 in plan payments over the course of the plan. Given this significant repayment and the valid reorganization purpose, "the Debtors acted equitably and with good intentions in proposing their [p]lan." *Id.* (citing *In re Chinichian,* 784 F.2d 1440, 1444 (9th Cir.1986)).

### C. The Debtors Are Devoting All of Their Income to the Plan

The Debtors' plan requires substantial payments for five years; however, the expected dividend for unsecured creditors remains small. The "fact that [a debtor's] plan provides for no payment to unsecured creditors is not sufficient to conclude that the plan was submitted in bad faith." *Metz,* 820 F.2d at 1498 (citations omitted). It is only required that "the amount to be paid on unsecured claims" be "as much as the unsecured creditors would have re-

---

**14.** The court also finds instructive the analysis of good faith contained within *In re Frazier,* 2011 WL at *7–8. There the court found that curing an arrearage and restructuring debt to save the debtors' family residence represented "a real, substantial plan and financial reorganization" that was "proposed in good faith, and not by any means forbidden by law."

**15.** The chapter 13 trustee did not object to confirmation of the Debtors' plan on feasibility grounds. The trustee must have been convinced, then, that the Debtors could make this payment.

ceived under chapter 7." *Id.* At 1499. Here there is no expected payment to unsecured creditors in a hypothetical liquidation under chapter 7, because the Debtors have no equity in any non-exempt assets, as evidenced by their schedules. The Debtors' decision to file for chapter 13 binds them to the terms of the plan for five years. The permanence of the lien avoidance is conditioned upon the successful completion of all plan payments. Income tax refunds, if any, for the years of 2009 through 2013 are to be remitted to the Trustee. All of the Debtors' disposable income, and then some, is devoted to the plan, and, therefore, the plan was proposed in good faith.

### D. The Debtors Did Not Use Serial Filings to Avoid Payment to Creditors

The Debtors' previous case was a "no asset" chapter 7, ending with no distribution to unsecured creditors. Nevada State Bank's lien was wholly unsecured, both then and now. Absent a miraculous recovery in the housing market, it would be impossible for Nevada State Bank to seek repayment through a foreclosure sale of their collateral. For those creditors still holding secured claims, the Debtors will be able to cure arrearages and continue debt payments. The Debtors will be able to address priority tax liability through this chapter 13 plan. Simply put, no creditor is in a worse position because of the chapter 13 bankruptcy, and some may actually be in a more favorable position if all payments are successfully made. *See Hill,* 440 B.R. at 185 (citing *In re Goeb,* 675 F.2d 1386, 1391 (9th Cir.1982) (finding that when unsecured creditors would receive no distribution in chapter 7, a chapter 13 plan providing for even a 1% distribution was not cause to find bad faith)).

As discussed at length, the Debtors had a valid bankruptcy purpose in filing the present chapter 13 case. The Debtors' plan was not proposed in contravention of the Bankruptcy Code and is not unfairly prejudicial to creditors. After carefully considering the above enumerated factors, as well as the other pertinent subsections of Section 1325 concerning plan confirmation, the court concludes that there is no barrier to confirmation of the Debtors' chapter 13 plan.

### VI. Conclusion

As so many living in the Greater Las Vegas area have recently found necessary, the Debtors in this case are attempting to reorganize their debts, and ultimately their lives, through bankruptcy. A few short years ago, in better economic times, it would have been unthinkable to most that housing prices would decline to such a degree that second mortgages would be wholly unsecured and "lien stripping" would become part and parcel of the chapter 13 case. Unfortunately, the court confronts this reality every day.

Before adoption of BAPCPA, the Supreme Court of the United States held that filing what is colloquially known as a chapter 20 bankruptcy was not improper. The United States Court of Appeals for the Ninth Circuit held that there is nothing improper about avoiding a wholly unsecured lien on a debtor's primary residence in chapter 13. Nothing in BAPCPA changes these results. As discussed at length above, this court holds that there is nothing improper about making lien avoidance permanent upon the successful completion of the chapter 13 plan, even if there is no discharge. The simple fact is that lien avoidance under *Zimmer* is independent of the granting of a discharge, and the permanence of such avoidance is assured by Section 1327. BAPCPA did not change this outcome.

The Debtors, through their plan of reorganization, have proposed a plan which

complies with the applicable provisions of the Bankruptcy Code. The plan was proposed in good faith and for a proper bankruptcy purpose. The court will thus allow confirmation of the Debtors' chapter 13 plan.

\* \* \*

Pursuant to Federal Rule of Bankruptcy Procedure 7052, applicable here pursuant to Federal Rule of Bankruptcy Procedure 9014, this memorandum decision constitutes the court's findings of fact and conclusions of law.

It is hereby ORDERED that the Debtors' chapter 13 plan is CONFIRMED.

This opinion is further ORDERED published.