**In re Alexander and Catherine ERDMANN, Debtors.**

**Alexander and Catherine Erdmann, Plaintiffs**

**v.**

**Charter One Bank, Defendant.**

**Bankruptcy No. 09–45975.**
**Adversary No. 10–00342.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

March 10, 2011.

---

Robert V. Schaller, Law Office of Robert Schaller, Oak Brook, IL, for Plaintiffs.

Monette W. Cope, Weltman Weinberg & Reis Co., LPA, Chicago, IL, for Defendant.

## MEMORANDUM DECISION

BRUCE W. BLACK, Bankruptcy Judge.

This matter is before the court for decision on the Motion for Summary Judgment filed by Charter One Bank, the Defendant, in this adversary proceeding, and its Motion to Vacate the Order of Confirmation entered in the underlying bankruptcy case. The Debtors commenced this adversary

proceeding to avoid the Defendant's junior mortgage lien on the Debtors' residence. Prior to judgment in the adversary case, the Debtors filed a modified plan that purported to avoid the junior lien and moot the adversary proceeding. For the following reasons, both motions are granted. The confirmation order in the bankruptcy case will be vacated as to Section G.5. of the May 10, 2010, modified plan. The confirmation order and the plan will continue in full force as to all other terms. Judgment will be entered in favor of the Defendant in the adversary. The Debtors cannot strip the Defendant's mortgage lien.

## I. Background

On January 27, 2009, Alexander Erdmann, one of the Debtors in the current chapter 13 bankruptcy, filed a voluntary petition under chapter 7 of the Bankruptcy Code.[1] In the schedule A accompanying the chapter 7 petition, Alexander listed his residence at 2 Genesee Court, Bolingbrook, Illinois, as having a secured claim against it in the amount of $437,646, which consisted of a first mortgage to Aurora Loan in the amount of $316,520 and a second mortgage to Charter Once Bank in the amount of $121,126. He listed the value of the property as $404,000. In that case, the trustee administered total assets of the estate in the amount of $17,834, and Alexander received a chapter 7 discharge on April 27, 2009.

On December 4, 2009, Alexander and his wife, Catherine, initiated the underlying bankruptcy under chapter 13 of the Code. Here the Debtors scheduled their residence at 2 Genesee Court, Bolingbrook, Illinois, to have an estimated value of $279,250, with a secured claim against the property in the amount of $331,990. The reduction in the amount of the secured claim between Alexander's individual chapter 7 case and the Debtors' joint chapter 13 case was accomplished by moving Charter One Bank's second mortgage lien from schedule D (secured claims) to schedule F (unsecured claims). The chapter 13 model plan the Debtors filed contemporaneously with their petition stated in Section G that the Debtors anticipated filing an adversary proceeding to strip the lien held by Charter One because the amount of the first mortgage on the property exceeded the value of the property.[2] As their initial plan promised, the Debtors filed the instant adversary proceeding on March 11, 2010, seeking to strip the Defendant's lien. On May 10, 2010, the Debtors filed a modified plan which changed the language in Section G to state that the Defendant had filed an unsecured claim and that the confirmation of the plan would constitute a finding that the Defendant's mortgage lien is wholly unsecured.[3] The amended provi-

1. 11 U.S.C. § 101 *ff.* Any reference to "section" or "the Code" is a reference to the Bankruptcy Code unless another reference is stated.

2. Part 7 of Section G in the December 4, 2009 plan states: "Debtor executed a second mortgage with Charter One. Debtor believes this mortgage is wholly unsecured. Debtor has not listed the second mortgage expense in Schedule J because, in part, the mortgage is wholly unsecured. Debtor anticipates filing an adversary proceeding to strip the lien held by Charter One."

3. Part 5 of Section G in the modified plan filed May 10, 2010, states: "Debtor executed a second mortgage with Charter One, secured by the real estate located at 2 Genesee Court, Bolingbrook, IL. This mortgage is wholly unsecured because the value of the real estate securing the mortgage is no more than $279,250 and the amount of the senior mortgage is not less than $316,520.41. Charter One has filed an UNSECURED claim, Claim No. 1. The confirmation of this plan shall constitute a finding that Charter One Bank, N.A.'s junior mortgage lien is wholly unse-

sion went on to state that the mortgage lien would be avoided and of no further legal effect. Confirmation of the modified plan was announced in court on May 14, 2010, and a confirmation order was entered and docketed on May 20, 2010.

The docket, however, shows that the Bankruptcy Noticing Center ("BNC") did not send out written notice of the modified plan until May 15, 2010, a day after the confirmation hearing. The Defendant promptly filed an objection to confirmation on May 19, 2010, but because the modified plan had already been confirmed the objection was never ruled on.

Several months passed with little activity in the underlying bankruptcy case as the adversary proceeding progressed. On November 10, 2010, the Defendant filed the instant motion for summary judgment. The Defendant asserts that (1) the confirmation of the plan does not preclude it from attacking the plan in this adversary proceeding; (2) the Debtors' plan cannot and did not strip its lien upon confirmation; and (3) because Alexander is ineligible for discharge and because the property is held in tenancy by the entirety, neither party may strip the lien. The Debtors have filed a response and the Defendant a reply. The material facts are undisputed, putting these issues properly before the court for summary judgment.

On December 21, 2010, to buttress its motion for summary judgment, the Defendant filed a motion to vacate the confirmation order under Federal Rule of Civil Procedure 60(b)(4), applicable to bankruptcy proceedings through Bankruptcy Rule 9024. The Defendant argues that the confirmation order is void because it was entered in violation of the Defendant's constitutional right to due process of law. In the alternative, the Defendant argues that

the confirmation order should be vacated as to Section G.5. of the May 10, 2010, modified plan.

## II. Motion to Vacate the Confirmation Order

 The finality of a confirmation order must be protected "so that all parties may rely upon it without concern that actions that they may later take could be upset because of a later change or revocation of the order." 8 Collier on Bankruptcy ¶ 1327.02[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). To that end, the only reason provided in the Code to revoke an order of confirmation is fraud, found in section 1330. Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 223.1, at ¶ 5, Sec. Rev. June 11, 2004, www.Ch13online.com; *Branchburg Plaza Assoc., L.P. v. Fesq (In re Fesq)*, 153 R.3d 113 (3d Cir.1998); 11 U.S.C. § 1330. Bankruptcy Rule 9024, however, provides that all of the reasons stated in Civil Procedure Rule 60 may be used to obtain relief from any order or judgment, without exception for confirmation orders. Federal Rule of Bankruptcy Procedure 9024. The complete applicability of Federal Rule of Civil Procedure 60(b) to confirmation orders might be questionable, however, due to the implicit exclusivity of section 1330. Lundin, § 223.1, Sec. Rev. June 11, 2004. What is not questionable is that a confirmation order entered in violation of due process notice requirements is void and Federal Rule of Civil Procedure 60(b)(4) is the proper vehicle to provide relief from such an order. *Id.;* 12 Moore's Federal Practice—Civil § 60.44; *see also United Student Aid Funds, Inc. v. Espinosa*, —— U.S. ——, 130 S.Ct. 1367, 1377, 176 L.Ed.2d 158 (2010) (stating "Rule 60(b)(4) applies only in the rare instance where a judgment is premised

---

cured. Said junior mortgage lien is avoided

and is of no further legal effect."

either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard").

 Although the Bankruptcy Rules require twenty-one days notice of any plan modification, the debtor's failure to provide such notice is not an automatic violation of due process of law. *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1203 (9th Cir.2008)("notice of how the Chapter 13 plan affects creditors' rights is all that the Constitution, the Bankruptcy Code and the Bankruptcy Rules require to bind creditors to the provisions of a confirmed plan under § 1327(a)") *aff'd*, —— U.S. ——, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010). The Bankruptcy Rules and Code may require more notice than required under the Constitution, but only a violation of constitutional due process renders a judgment or order void. Lundin, § 229.1, at ¶ 65, Sec. Rev. Oct. 8, 2010. Therefore, in many instances actual notice, although in violation of the Bankruptcy Rules, is sufficient to bind a creditor to the terms of a confirmed plan. *See In re Toth*, 61 B.R. 160 (Bankr.N.D.Ill.1986). But when the creditor is provided with no notice of the modified plan prior to the confirmation hearing, the creditor has been deprived of due process of law and its terms cannot bind that creditor. *Espinosa*, 130 S.Ct. at 1377; Lundin, § 229.1, at ¶ 44, Sec. Rev. Oct. 8, 2010.

 A confirmation order binds all the creditors to the terms of the plan. 11 U.S.C. § 1327. Different creditors may be bound by different terms under the plan. The fact that one of these creditors was not given notice of a term—as due process requires—cannot warrant the vacation of the confirmation order as to all creditors and all terms. *See Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160, 163 (4th Cir.1993)(stating that a violation of the creditor's due process rights was a sufficient ground for vacating the confirmation order as to that particular creditor); *In re Stewart*, 190 B.R. 846, 855 (Bankr.C.D.Ill.1996)(holding that the individual creditor was not bound by the plan due to insufficient notice). In short, the confirmation order cannot be revoked simply because the debtor slipped in a term that alters the rights of a single creditor at the last minute. Without the opportunity to object to such a term, however, the confirmation order cannot bind the creditor as to that particular term. Therefore, such a violation of due process only warrants the vacation of confirmation of the particular term of which the creditor did not have notice. The Code's policy toward finality in confirmation orders demands that the remaining provisions of the confirmation order stay in full force.

 As noted above, the docket shows that the modified plan was filed on May 10, 2010, and confirmation was announced in court on May 14, 2010. The confirmation order was then entered and docketed with the clerk's office on May 20, 2010. While the Debtors believe that the Defendant received notice upon filing the modified plan on May 10, 2010, the Administrative Procedures for the CM/ECF system indicate that they did not. Administrative Procedure II.B.3.a. states that when a document is filed the system automatically sends an email to the "United States Trustee, the case trustee, and to all Registrants who have previously filed a document in the case." This email constitutes notice to these recipients. Merely filing a claim in the case does not qualify for such notice, however. Here, the CM/ECF system shows that the Defendant's first filing in the case was on May 19, 2010—its objection to plan confirmation. At that time it was added to the list of parties to receive

electronic notice under Administrative Procedure II.B.3.a., and not before.

The BNC sent notice of the modified plan to all creditors that did not received notice under Administrative Procedure II. B.3.a., including the Defendant, on May 15, 2010. The Defendant promptly filed its objection four days later on May 19, 2010. Given these facts, as a matter of law, the Defendant was not given any opportunity to raise its objection to Section G.5. of the modified plan prior to the confirmation hearing and was thereby deprived of due process of law. Therefore, the Defendant's motion to vacate the confirmation of Section G.5. of the May 10, 2010, modified plan will be granted. The confirmation order remains in full force as to all other provisions of the plan.

## III. Res Judicata

■ The Debtors assert in their response that the doctrine of *res judicata* precludes the Defendant from re-litigating a claim that could have been objected to prior to confirmation. They also argue section 1327(a) of the Bankruptcy Code precludes granting any relief for the Defendant.[4] The short answer to the Debtor's argument is that a void order has no effect of any kind, whether preclusive or otherwise. Lundin, § 229.1, at ¶ 2, Sec. Rev. June 15, 2004; 8 Collier on Bankruptcy ¶ 1327.02[1][c]; *Welch v. Johnson*, 907 F.2d 714, 719 (7th Cir.1990). Thus, the confirmation order cannot have a preclusive effect under section 1327 or under the doctrine of *res judicata* for the very same reason that the confirmation order was vacated as to Section G.5. of the modified plan. Due process of law must be served.

## IV. Lien Stripping Without Discharge

■ Although the confirmation of Section G.5. of the Debtors' confirmed plan is vacated, whether discharge is required for lien avoidance must still be addressed. Some courts have allowed liens to be stripped upon completion of plan payments without requiring the Debtors to be eligible for discharge under section 1328. *See In re Tran*, 431 B.R. 230, 235 (Bankr. N.D.Cal.2010).

The Model Plan adopted by the judges in this district, which was used here, provides in Section B.3. that a claim secured by a lien on property of the estate remains until the debt supporting the lien is satisfied or a discharge is entered under section 1328.[5] Northern District of Illinois Bankruptcy Court, Chapter 13 Model Plan, rev. 01/2009, *available at* http://www.ilnb. uscourts.gov/Forms/Form_Orders.cfm. This section simply puts the requirements of section 1325(a)(5) into every plan. 11 U.S.C. § 1325(a)(5). Debtors, however, may amend the language in the Model Plan through the use of special terms in Section G. Here, the Debtors used Section G to alter Section B.3. to provide that the Defendant's "junior mortgage lien is avoided and is of no further legal effect."

The Defendant asserts that the plan cannot provide for its lien to be stripped

---

4. The doctrine of *res judicata* is different than the *res judicata* effect of 11 U.S.C. § 1327(a). Section "1327(a) is a comprehensive statutory declaration of binding effect that is not dependent on or limited by the conventional rules for preclusion." Lundin, § 229.1 at ¶ 4, Sec. Rev. Oct. 8, 2010. The differences are immaterial in the current case.

5. Part 3 of Section B of the Model Plan states "The holder of any claim secured by a lien on property of the estate, other than a mortgage treated in Section C or in Paragraph 2 of Section E, shall retain the lien until the earlier of (a) payment of the underlying debt determined under nonbankruptcy law, or (b) discharge under 11 U.S.C. § 1328, at which time the lien shall terminate and be released by the creditor."

off until the underlying debt is fully paid or a discharge is entered pursuant to section 1325(a)(5). In other words, the Defendant believes that Section B.3. of the Model Plan may not be altered through the use of special terms to strip a lien prior to discharge entered under section 1328. The Defendant is correct in this assertion. The majority of courts and commentators taking up this issue require a discharge be entered prior to the lien being removed. *In re Fenn,* 428 B.R. 494 (Bankr.N.D.Ill.2010); *In re Gerardin,* 2011 WL 672050, 2011 Bankr.LEXIS 514 (Bankr.S.D.Fla.2011); *see also* 4 Collier on Bankruptcy ¶ 506.06[1][c]. This is the best reading of section 1325 in conjunction with sections 502 and 506. *In re Fenn,* 428 B.R. 494. Therefore, the Debtors' attempt to circumvent the requirements of section 1325(a)(5) as provided in the Model Plan under Section B.3. must fail. Notwithstanding the language of Section G in the Model Plan, which allows any part of the Model Plan to be modified through special terms, Section B.3. may not be altered in a way that is contrary to section 1325(a)(5) of the Code. A lien cannot be avoided prior to discharge entered under section 1328.

## V. Alexander's Ineligibility for Discharge

The Defendant also asserts that neither Alexander nor Catherine may strip the lien upon discharge due to Alexander's ineligibility for discharge and the tenancy in which the property is owned. When Alexander was granted a discharge in his chapter 7 case, he was relieved of personal liability on the underlying debt that he and his wife owed to the Defendant, but the Defendant's lien against the property was not altered by the discharge. *See In re Fenn,* 428 B.R. at 497. The Debtors now seek to strip the Defendant's lien in this chapter 13 case. Alexander is not eligible for discharge in this case because he was granted discharge in his chapter 7 proceeding within the past four years. 11 U.S.C. § 1328(f)(1). It follows that Alexander's ineligibility for discharge also makes him ineligible to have the lien stripped as to his interest. Catherine, however, is eligible for discharge and thus would appear to be able strip the Defendant's lien. While the Debtors argue that this is a straight forward exercise of allowing Catherine to avoid the lien as to her interest only, it is not that simple.

Alexander and Catherine hold the property as tenants by the entirety. With very limited exception, property rights are created and defined by state law. *See U.S. v. Craft,* 535 U.S. 274, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002). In Illinois, tenancy by the entirety is limited to homestead property. 765 Ill. Comp. Stat. 1005/1c. Nearly all other common-law aspects of the tenancy have survived. Tenancy by the entirety is

> an estate in which a husband and wife hold property as one person or as a single entity, notwithstanding the disappearance of the hypothetical unity of husband and wife at common law. It is essentially a joint tenancy, modified by the common-law theory that the husband and wife are one person.

21 Ill. Law and Prac. Husband & Wife § 26. Therefore, tenancy by the entirety can be described as a severalty with two owners but only one tenant—the marital unity—as compared to a type of concurrent tenancy, *e.g.,* joint tenancy or tenancy in common, where there can be a plurality of owners with each owner also a tenant. Orth, Tenancy by the Entirety: The Strange Career of the Common–Law Marital Estate, 1997 B.Y.U.L. Rev. 35, 38–39, *see also Craft,* 535 U.S. at 293, 122 S.Ct. 1414 (Thomas, J. dissenting). Due to this

legal fiction, all interest in the property is vested in the marital unity. 7 Powell on Real Property § 52.03[4] (Michael Allan Wolf ed., LexisNexis Matthew Bender) ("Both spouses acting in concert can convey or encumber their tenancy by the entirety, as may one spouse acting as the agent of the other. Neither, acting alone, can do so"); *Premier Property Management, Inc. v. Chavez*, 191 Ill.2d 101, 245 Ill.Dec. 394, 728 N.E.2d 476, 479 (2000), citing 735 Ill. Comp. Stat. 5/12–112. Neither spouse may act unilaterally as the marital unity to cause a change in the property interest. Orth, 1997 B.Y.U.L.Rev. at 38–39; 7 Powell on Real Property § 52.03[4]. Nor can both spouses act in concert as the marital unity to bring about a result that treats one spouse's ownership differently than the other's. Orth, 1997 B.Y.U.L.Rev. at 38–39; 7 Powell on Real Property § 52.03[4].

■ This rule complicates this case because only one spouse, Catherine, is eligible to strip the lien. Such a result would leave the Defendant with no lien on Catherine's interest but "with an unmodified lien on [Alexander's] interest—a split personality that probably isn't easily described or digested under state property law." Lundin, § 128.1 at ¶ 28, Sec. Rev. June 14, 2004; *see also Hunter v. Citifinancial, Inc. (In re Hunter)*, 284 B.R. 806 (Bankr.E.D.Va.2002). Tenancy by the entirety simply does not provide for a lien against the property as to only one spouse. It is all or nothing, and to hold otherwise would change the very definition of the tenancy. As the Debtors have opted for the protections that tenancy by the entirety provides, they must live with its burdens. They must understand that with respect to this piece of property they are one entity, one individual, and one tenant. Only when the Debtors are able to act as one in the marital unity may they cause the Defendant's lien to be stripped. Alex-

ander's ineligibility precludes them from acting as one. The Defendant's motion for summary judgment will be granted.

## VI. Conclusion

Charter One Bank's motion to vacate the confirmation order in the underlying bankruptcy case will be granted as to Section G.5. It was not afforded an opportunity to object to the modified term as due process of law requires. The Defendant's motion for summary judgment in this adversary proceeding will also be granted. Tenancy by the entirety creates a single tenancy in the marital unity. As such, neither spouse may have an ownership in the tenancy that is burdened more than the other. Only when the spouses act as one may they strip the Defendant's lien. Consistent orders will be entered in the bankruptcy case and the adversary proceeding.

### Order Partially Vacating the Order of Confirmation

This cause coming to be heard on Charter One Bank's Motion to Vacate the Order of Confirmation, this court having proper jurisdiction over the matter, and being duly advised,

IT IS ORDERED:

For the reasons stated in the Memorandum Decision entered in the adversary proceeding 10A00342 contemporaneously with this order, Section G.5. of the confirmed plan is vacated. The confirmation order and the plan remain in full force as to all other terms.