In re James JENNINGS and Rubye Jennings, Debtors.

In re Bryce Hill and Dena Hill, Debtors.

Nos. 11–50570–CRM, 10–88514–CRM.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

July 11, 2011.

E.L. Clark, Clark & Washington, P.C., Atlanta, GA, for Debtors.

## MEMORANDUM OPINION ON CHAPTER 20 LIEN STRIPPING

C. RAY MULLINS, Bankruptcy Judge.

*Introduction*

The issue before the Court is whether a "chapter 20 debtor"—a debtor who is ineligible for a chapter 13 discharge pursuant to section 1328(f) of the Bankruptcy Code because of a recent chapter 7 discharge— may strip off[1] the lien of a wholly underwater second mortgage ("lien stripping"). For the reasons set forth herein, the Court finds that if the plan is filed in good faith, a chapter 20 debtor may strip off such a lien in a chapter 13 plan.

*Procedural Posture*

Nancy Whaley, the chapter 13 trustee (the "Trustee") has objected to plan confirmation in two cases: James and Rubye Jennings, 11–50570–CRM, and Bryce and Dena Hill, 10–88514–CRM. Given the similarity in facts, procedural posture, legal issue, and counsel, the Court asked the parties to brief the chapter 20 lien stripping issue before the May 18, 2011 confirmation hearings.

*Background*

*Jennings*

On December 1, 2007, James and Rubye Jennings filed chapter 13 case 07–80069–CRM (the "Jennings '07 Case"). The plan in the Jennings '07 Case was confirmed on March 4, 2008, and thereafter modified. The Jennings paid a total of $14,342.19 to the Trustee (Document No. 84) before they requested conversion to chapter 7 (Document No. 75). The Jennings '07 Case was converted to chapter 7 on December 22, 2009. On March 5, 2010, the chapter 7 trustee filed a report of no dis-

---

1. In bankruptcy law parlance 'strip off' refers to voiding the lien of a debt which is not supported by any collateral value and 'strip down' refers to voiding a lien of debt that is partially supported by collateral value.

tribution, and the Jennings received their chapter 7 discharge on April 7, 2010. The Jennings filed chapter 13 case 11–50570–CRM on January 3, 2011, almost nine months after their chapter 7 discharge. The Jennings's current schedules indicate their home is worth $102,000, subject to a first mortgage to America's Servicing Company for $202,000, a materialman's lien to Data Processing Services, Inc. for $3,800, and a second mortgage to Lendmark for $24,800. Document No. 1.

*Hill*

On March 6, 2009, Bryce and Dena Hill filed chapter 13 case 09–66049–CRM (the "Hill '09 Case"). The plan in the Hill '09 Case was confirmed June 16, 2009. Document No. 29. On January 28, 2010, the Hills requested conversion to chapter 7, (Document No. 48), which was granted on January 29, 2010. The chapter 7 trustee filed a report of no distribution on February 23, 2010, and the Hills received their chapter 7 discharge on May 20, 2010. The Hills filed chapter 13 case 10–88514–CRM on September 27, 2010, a little over four months after their chapter 7 discharge. The Hills value their home at $105,000, subject to a first mortgage to Wells Fargo for $143,668.36 and a second mortgage to Wells Fargo for $31,366.54.

*Lien Stripping in Chapter 13*

■ Before a creditor can recover in a chapter 13 case it must first hold a 'claim,' as defined by the Bankruptcy Code. 11 U.S.C. § 101(5). Next, the claim must be allowed under section 502 of the Bankruptcy Code. 11 U.S.C. § 502. Section 506(a) further classifies the holder of an allowed claim as the holder of an allowed secured claim or an allowed unsecured claim. 11 U.S.C. § 506(a)(1). The 506(a) classification is based on the value of the underlying collateral: "An allowed claim of a creditor secured by a lien on property . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." *Id.*

■ Classification as a holder of a secured claim under the Bankruptcy Code is not synonymous with holding a security interest outside of bankruptcy. " 'Secured claim' is a term of art within the Bankruptcy Code, and means something different than it does for a creditor to have a security interest or lien outside of bankruptcy." *In re Nwogbe,* 451 B.R. 90, 93 (Bankr. D.Nev.2011) (Markell, J.).[2] Having a lien outside of bankruptcy is translated under bankruptcy law as having the 'rights' of a secured creditor, not necessarily as being a holder of a secured claim. This leads to the arguably counter-intuitive possibility that in bankruptcy a holder of an unsecured claim could have the 'rights' of a secured creditor. In other words, a second mortgagee whose debt is secured (under state law) by collateral valued less than the debt owed on the first mortgage, under bankruptcy law is classified as a holder of an allowed unsecured claim but also has 'rights' of a secured creditor. *See Tanner v. FirstPlus Fin., Inc. (In re Tan-*

**2.** Note that when the United States Supreme Court in *Dewsnup* referred to 'allowed secured claim' not being a term of art, it did so in the context of comparing section 506(a) with section 506(d) of the Bankruptcy Code. *Dewsnup v. Timm (In re Dewsnup),* 502 U.S. 410, 415, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) ("[R]espondents, joined by the United States as *amicus curiae,* argue more broadly that the words 'allowed secured claim' in § 506(d) need not be read as an indivisible term of art defined by reference to § 506(a)...." The Supreme Court majority later adopted the respondents' approach.). Judge Markell refers to 'allowed secured claim' being a term of art in comparing bankruptcy law to non-bankruptcy law.

*ner)*, 217 F.3d 1357 (11th Cir.2000); *Nobelman v. Am. Sav. Bank (In re Nobelman)*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993); *Dewsnup v. Timm (In re Dewsnup)*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

■ Classification as a holder of a secured or unsecured claim is important because in a chapter 13 case, section 1322(b)(2) of the Bankruptcy Code permits a debtor, through the chapter 13 plan, to modify the rights of creditors (both secured and unsecured) but specifically protects "the rights of holders of secured claims" that are "secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2) (the "anti-modification provision"). The anti-modification provision only protects the rights of creditors classified as holders of secured claims after applying section 506(a). *In re Tanner*, 217 F.3d at 1357; *In re Nobelman*, 508 U.S. at 324, 113 S.Ct. 2106; *In re Nwogbe*, 451 B.R. at 93. The anti-modification provision does not protect all creditors holding security interests as defined outside of bankruptcy—specifically, the anti-modification provision does not protect creditors classified by section 506(a) as holders of unsecured claims. *In re Tanner*, 217 F.3d at 1357. It only applies to holders of secured claims as defined under bankruptcy law. "This logic is 'compelled by the Supreme Court's decision in *Nobelman*,' and has been embraced by all six circuit

courts that have considered the question." [3]

Thus, in a chapter 13 case in which the debtor is eligible for a discharge, the debtor is able to use the chapter 13 plan to void the liens of mortgagees holding unsecured claims. Because in a typical chapter 13 case plan completion and discharge generally occur around the same time,[4] there is some confusion as to when and by what mechanism the lien is voided—does plan completion void the lien or does discharge void the lien? [5]

■ Plan completion voids the lien. Discharge cannot be the legal mechanism that voids the lien. The Bankruptcy Code and the United States Supreme Court in *Johnson v. Home State Bank* state that discharge *only* voids *in personam* liability. 11 U.S.C. § 524(a) ("A discharge in a case under this title—(1) voids any judgment ... to the extent such judgment is a determination of the personal liability of the debtor ..."); *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) ("[A] discharge extinguishes only 'the personal liability of the debtor.' Codifying the rule in *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886) ... the Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy."). The theory that plan completion rather than discharge voids the lien is supported by the fact that debtors may void liens in chapter 13 (utilizing the chap-

---

3. *Nwogbe*, 451 B.R. at 93–94 (citing *Zimmer*, 313 F.3d at 1227; *In re Lane*, 280 F.3d 663, 667–69 (6th Cir.2002); *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122, 126 (2d Cir.2001); *Tanner v. FirstPlus Fin., Inc. (In re Tanner)*, 217 F.3d 1357, 1359–60 (11th Cir. 2000); *In re Bartee*, 212 F.3d 277, 288, 295 (5th Cir.2000); *McDonald v. Master Fin. Inc. (In re McDonald)*, 205 F.3d 606, 611 (3d Cir. 2000). Bankruptcy Appellate Panels have also reached this same result. *Griffey v. U.S.*

*Bank (In re Griffey)*, 335 B.R. 166, 167–68 (10th Cir. BAP 2005); *In re Mann*, 249 B.R. 831, 836 (1st Cir. BAP 2000)).

4. 11 U.S.C. § 1328(a) ("... as soon as practicable after completion by the debtor of all payments under the plan ... the court shall grant the debtor a discharge....").

5. *See infra* notes 7–9.

ter's plan provisions) but not in chapter 7 (where debtors receive discharges but do not propose, perform, and complete plans). *In re Dewsnup*, 502 U.S. at 410, 112 S.Ct. 773; *In re Nobelman*, 508 U.S. at 324, 113 S.Ct. 2106; *In re Tanner*, 217 F.3d at 1357.

This arguably confusing[6] legal framework provides for lien stripping in a chapter 13 case where the debtor is eligible for a chapter 13 discharge. The question before the Court is whether a chapter 13 debtor who is ineligible for a chapter 13 discharge is prevented from utilizing this legal framework as well.

### Lien Stripping in Chapter 20

There is an accruing split of authority among courts across the country regarding the permissibility of chapter 20 lien stripping.[7] Generally speaking, this split of authority can be grouped into three approaches. In the first approach courts hold that chapter 20 lien stripping is impermissible because it amounts to a de facto discharge.[8] These courts rely on *Dewsnup* and Congress's inclusion of a discharge requirement in section 1325(a)(5), and treat the wholly underwater second mortgagee as a holder of a secured claim. Courts that adopt the second approach permit chapter 20 lien strip-

6. *In re Dewsnup*, 502 U.S. at 416–17, n. 3, 112 S.Ct. 773 ("... § 506 of the Bankruptcy Code and its relationship to other provisions of that Code do embrace some ambiguities.... We concluded that respondents' alternative position ... although not without its difficulty, generally is the better of the several approaches.... [W]e express no opinion as to whether the words 'allowed secured claim' have different meaning in other provisions of the Bankruptcy Code."); *In re Tanner*, 217 F.3d at 1359–60 ("Although this is a close issue, we ... adopt the majority view. [It is] the only reading of both sections 506(a) and 1322(b)(2) that renders neither a nullity ..."); *Am. Gen. Fin., Inc. v. Dickerson (In re Dickerson)*, 222 F.3d 924, 926 (11th Cir.2000) ("This court's recently announced decision in *In re Tanner*, 217 F.3d 1357 (11th Cir.2000), controls the disposition of the case now before us.... However, were we to decide this issue on a clean slate, we would not so hold.").

7. *In re Tran*, 431 B.R. 230 (Bankr.N.D.Cal. 2010); *In re Gerardin*, 2011 Bankr.LEXIS 970 (Bankr.S.D.Fla. Mar. 28, 2011); *In re Fenn*, 428 B.R. 494 (Bankr.N.D.Ill.2010); *In re Jarvis*, 390 B.R. 600 (Bankr.C.D.Ill.2008); *In re Mendoza*, 2010 WL 736834, 2010 Bankr.LEXIS 664 (Bankr.D.Colo. Jan. 21, 2010); *Blosser v. KLC Fin., Inc. (In re Blosser)*, 2009 WL 1064455, 2009 Bankr.LEXIS 1049 (Bankr. E.D.Wis. Apr. 15, 2009); *In re Winitzky*, 2009 Bankr.LEXIS 2430 (Bankr.C.D.Cal. May 7, 2009); *Lindskog v. M & I Bank FSB (In re Lindskog)*, 2011 WL 1576561, 2011 Bankr.LEXIS 1666 (Bankr.E.D.Wis. Apr. 13, 2011); *Bank of the Prairie v. Picht (In re Picht)*, 428 B.R. 885 (10th Cir. BAP 2010); *In re Collins*, 2010 WL 5173840, 2010 Bankr.LEXIS 4640 (Bankr.D.Or. Dec. 15, 2010); *Erdmann v. Charter One Bank (In re Erdmann)*, 446 B.R. 861 (Bankr.N.D.Ill.2011); *Grandstaff v. Casey (In re Casey)*, 428 B.R. 519 (Bankr.S.D.Cal.2010); *In re Trujillo*, 2010 WL 4669095, 2010 Bankr.LEXIS 3834 (Bankr. M.D.Fla. Nov. 10, 2010); *In re Colbourne*, 2010 WL 4485508, 2010 Bankr.LEXIS 3813 (Bankr.M.D.Fla. Nov. 8, 2010); *Hart v. San Diego Credit Union*, 449 B.R. 783 (Bankr. S.D.Cal.2010); *In re Jazo*, 2010 WL 3947303, 2010 Bankr.LEXIS 3534 (Bankr.S.D.Cal. Sept. 28, 2010); *In re Frazier*, 448 B.R. 803 (Bankr.E.D.Cal.2011); *Davis v. TD Bank, N.A. (In re Davis)*, 447 B.R. 738 (Bankr.D.Md. 2011); *In re Grignon*, 2010 WL 5067440, 2010 Bankr.LEXIS 4279 (Bankr.D.Or. Dec. 7, 2010); *In re Hill*, 440 B.R. 176 (Bankr. S.D.Cal.2010); *In re Fair*, 450 B.R. 853 (Bankr.E.D.Wis.2011); *In re Waterman*, 447 B.R. 324 (Bankr.D.Colo.2011); *In re Nwogbe*, 451 B.R. 90 (Bankr.D.Nev.2011).

8. *In re Gerardin*, 2011 Bankr.LEXIS 970; *In re Fenn*, 428 B.R. 494; *In re Jarvis*, 390 B.R. 600; *In re Mendoza*, 2010 WL 736834, 2010 Bankr.LEXIS 664; *In re Blosser*, 2009 WL 1064455, 2009 Bankr.LEXIS 1049; *In re Winitzky*, 2009 Bankr.LEXIS 2430; *In re Lindskog*, 2011 WL 1576561, 2011 Bankr.LEXIS 1666; *In re Picht*, 428 B.R. 885; *In re Collins*, 2010 WL 5173840, 2010 Bankr.LEXIS 4640; *In re Erdmann*, 446 B.R. 861.

ping; however after plan consummation, without a discharge, the parties' pre-bankruptcy rights are reinstated.[9] These courts contend that discharge is the mechanism that voids the lien and that chapter 20 plans end in dismissal. The courts utilizing the third approach allow chapter 20 lien stripping because nothing in the Bankruptcy Code prevents it.[10] These courts contend that the mechanism that voids the lien is plan completion and that chapter 20 cases end in administrative closing.

*The Chapter 13 Trustee's Argument*

The Trustee argues that the subject chapter 13 plans fail to comply with section 1325(a)(5) of the Bankruptcy Code. The Trustee contends that in a typical chapter 13 plan that seeks to strip a lien, section 1325(a)(5) applies and is satisfied because the debtor receives a discharge. Section 1325(a)(5) of the Bankruptcy Code provides, in relevant part, "with respect to each allowed secured claim provided for by the plan—(B)(i) the plan provides that—(I) the holder of such claim retain the lien securing such claim until the earlier of— (aa) the payment of the underlying debt determined under nonbankruptcy law; or (bb) discharge under section 1328." 11 U.S.C. § 1325(a)(5). The Trustee argues that this language, added by Congress in the 2005 BAPCPA amendments, leads to the conclusion that discharge, rather than plan completion voids the lien. And therefore the Trustee argues that a chapter 13 discharge is necessary to strip a lien.

The Trustee acknowledges that section 506(a) of the Bankruptcy Code classifies claims into secured and unsecured claims;

and that pursuant to section 506(a) and the Eleventh Circuit's holding in *Tanner* that a wholly unsecured claim under 506(a) is treated as an unsecured claim for purposes of section 1322(b)(2). However, the Trustee argues that *Tanner* is inapposite because *Tanner* addressed neither the application of section 1325 of the Bankruptcy Code, nor the situation where the debtor is ineligible for a discharge. The Trustee claims that *Tanner* only looked at the interplay between sections 506(a) and 1322. The Trustee contends that Lendmark and Wells Fargo ("the second mortgagees") have allowed *secured* claims for the purposes of section 1325(a)(5). The Trustee relies on *Dewsnup* which held that section 506(a) does not define the term "allowed secured claim" and that Congress, with BAPCPA, did not intend to change the pre-Bankruptcy Code rule that liens pass through bankruptcy unaffected.

The Trustee further posits that allowing chapter 20 debtors to void the liens of wholly underwater second mortgages would amount to a de facto discharge when the Bankruptcy Code specifically denies them a discharge in section 1328(f). The Trustee notes that the Debtors would receive a greater benefit than chapter 13 debtors entitled to a discharge. Specifically, the Trustee points out that the Debtors' plans do not treat the second mortgage claim *at all*—whereas in a typical chapter 13 lien strip plan, the lien stripped second mortgage is treated as an unsecured claim. In support of her argument, the Trustee contends there are only three ways a chapter 13 case can end: dismissal, conversion,

---

9. *In re Casey,* 428 B.R. 519; *In re Trujillo,* 2010 WL 4669095, 2010 Bankr.LEXIS 3834; *In re Colbourne,* 2010 WL 4485508, 2010 Bankr.LEXIS 3813; *Hart v. San Diego Credit Union,* 449 B.R. 783; *In re Jazo,* 2010 WL 3947303, 2010 Bankr.LEXIS 3534; *In re Frazier,* 448 B.R. 803; *In re Davis,* 447 B.R. 738.

10. *In re Grignon,* 2010 WL 5067440, 2010 Bankr.LEXIS 4279; *In re Hill,* 440 B.R. 176; *In re Fair,* 450 B.R. 853; *In re Waterman,* 447 B.R. 324; *In re Nwogbe,* 451 B.R. 90.

or discharge; and 'closing' a chapter 13 case is merely an administrative term. According to the Trustee, plan completion without discharge is effectively a dismissal, and section 349 of the Bankruptcy Code specifically provides that dismissal of a chapter 13 case without discharge "reinstates any lien voided under section 506(d) of this title." 11 U.S.C. § 349(b)(1)(c). Finally, the Trustee argues that the subject plans were not filed in good faith.

*The Debtors' Argument*

The Debtors argue that *Dewsnup* is not controlling. Debtors contend that it follows from *Dewsnup, Nobelman,* and *Tanner* that liens wholly or partially supported by collateral value are treated as secured claims, while liens that are not supported by any collateral value are treated as unsecured claims. Thus the Debtors contend the second mortgagees are holders of unsecured claims and the requirements of section 1325(a)(5) do not apply. The Debtors further argue that the unsecured personal liability on the second mortgages was discharged in the previous chapter 7 cases; therefore all the second mortgagees have are bare unsecured liens and thus they are not entitled to any plan distribution. The Debtors argue that pursuant to section 506, the second mortgagees have allowed claims, but not secured claims. And they contend therefore that under section 506(d) the lien is void. Finally the Debtors argue that disallowing lien stripping in chapter 20 violates the "fresh start" and rehabilitative policies of the Bankruptcy Code.

*Holding*

■ The Court joins those courts that adopt the third approach to chapter 20 lien stripping and finds chapter 20 lien stripping permissible, conditioned on a finding of good faith and plan completion.

The Court concludes that nothing in the Bankruptcy Code prevents chapter 20 lien stripping. Pursuant to BAPCPA, Congress was deliberate in only prohibiting discharge in a chapter 20 case. 11 U.S.C. § 1328(f). Congress provided no limitation on a debtor's eligibility to be a chapter 13 debtor after receiving a chapter 7 discharge. 11 U.S.C. § 109; *In re Lewis,* 339 B.R. 814 (Bankr.S.D.Ga.2006) (finding that ineligibility to receive a discharge per 1328(f) does not affect eligibility to file a chapter 13 case). Given chapter 13 debtor eligibility, nothing in sections 506, 1322, 1325, 1327, or any other section of the Bankruptcy Code limits a chapter 20 debtor's ability to take advantage of the protections chapter 13 provides. Lien-stripping is one of the tools in the chapter 13 toolbox. And use of the chapter 13 lien stripping tool is not conditioned on discharge eligibility. *In re Hill,* 440 B.R. at 182 (citing *In re Tran,* 431 B.R. at 235). Therefore, the Court finds that chapter 20 debtors may lien strip through their chapter 13 plans.

■ However, the Debtors' chapter 13 plans may not disregard the second mortgagees' claims entirely. Although Debtors may strip the liens securing the claims of the second mortgagees, the plans must treat the allowed claims as unsecured claims. "Once the lien is so avoided, the unsecured claim that is represented by this nonrecourse debt becomes an unsecured claim in the bankruptcy case." *In re Nwogbe,* 451 B.R. at 96 (citing *In re Hill,* 440 B.R. at 182; *In re Tran,* 431 B.R. at 237; 11 U.S.C. § 506(a)). Here, the second mortgagees, Lendmark and Wells Fargo, have filed claims in the respective cases. With or without the liens securing the claims, the second mortgagees still have a "right to payment." 11 U.S.C. § 101(5). The claims are allowed per section 502 and unsecured per section 506(a). Thus, they must be treated as holders of

allowed unsecured claims in the chapter 13 plans.

■ Given the second mortgagees' status as holders of unsecured claims for purposes of the chapter 13 plans, the Court finds that section 1325(a)(5) does not apply. *In re Nobelman,* 508 U.S. at 324, 113 S.Ct. 2106; *In re Tanner,* 217 F.3d at 1357. Rather, for the Court to confirm the chapter 13 plans with respect to the second mortgagees' rights, it must ensure that section 1325(a)(4)—commonly referred to as the best interest of the creditors test—is satisfied. Logic supports consistently treating a creditor as the holder of an unsecured claim for the purposes of the Bankruptcy Code sections dealing with the chapter 13 plan—specifically here sections 1322 and 1325. *In re Hill,* 440 B.R. at 183 ("To remain true to the holding of *Zimmer* [the 9th Circuit's equivalent to *Tanner* ] . . . [the creditor's] unsecured claim cannot logically be treated differently under 1325 than 1322.").

■ The Court finds that upon plan completion the appropriate legal end to the chapter 20 case is to close the case without a discharge. 11 U.S.C. § 350(a); *In re Nwogbe,* 451 B.R. at 99–100; *In re Tran,* 431 B.R. at 235.[11]

*Good Faith*

■ With respect to wholly underwater second mortgages, the Court must ensure the chapter 13 plan satisfies section 1325(a)(4), as well as the other applicable subsections of 1325(a). "A central issue of a 'chapter 20' case is whether 'the action of the debtor in filing the petition was in good faith' [11 U.S.C. § 1325(a)(7) ], and whether 'the plan has been proposed in good faith and not by any means forbidden by law' [11 U.S.C. § 1325(a)(3) ]." *In re Casey,* 428 B.R. at 521. Per the Supreme Court's ruling in *United Student Aid Funds, Inc. v. Espinosa,* — U.S. —, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010), the Court has a duty to ensure that chapter 13 plans comply with the Bankruptcy Code— including the good faith requirements in sections 1325(a)(3) and (a)(7).

■ In the Eleventh Circuit, courts utilize a totality of the circumstances test to determine good faith.[12] Considering the good faith issue in chapter 20 lien strip plans, Judge Markell (relying on Judge Mann's discussion of good faith in *Hill* ) addressed the following factors: 1) wheth-

---

11. *In re Nwogbe,* 451 B.R. at 99–100 n. 10 ("While other courts have determined that dismissal is the appropriate outcome upon the completion of plan payments, this is inappropriate because dismissal of a chapter 13 case is only to occur either voluntarily or for cause. 11 U.S.C. § 1307. Because dismissal is addressed in Section 1307, and because the successful completion of all plan payments does not constitute cause for dismissal under subsection (c) of section 1307, it is inappropriate for the case to be dismissed upon the successful completion of all plan payments.").

12. *Kitchens v. Ga. R.R. Bank & Trust Co. (In re Kitchens),* 702 F.2d 885, 888–89 (11th Cir. 1983) (In the Eleventh Circuit bankruptcy courts "must consider, but are not limited to the following: (1) the amount of the debtor's income from all sources; (2) the living ex-

penses of the debtor and his dependents; (3) the amount of attorney's fees; (4) the probable or expected duration of the debtor's Chapter 13 plan; (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13; (6) the debtor's degree of effort; (7) the debtor's ability to earn and the likelihood of fluctuation in his earnings; (8) special circumstances such as inordinate medical expense; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors; (10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors; (11) the burden which the plan's administration would place on the trustee.").

er the debtors have a need for bankruptcy other than lien avoidance; 2) whether debtors acted equitably in proposing the plan; 3) whether debtors are devoting their income to the plan; and 4) whether the debtors used serial filings to avoid paying their creditors. *In re Nwogbe*, 451 B.R. at 101–03 (citing *In re Hill*, 440 B.R. at 184–85). Another bankruptcy court considered additional good faith factors when considering chapter 20 lien strip plans: 1) the proximity in time of the chapter 13 filing to the chapter 7 filing; 2) whether the debtor has incurred some change in circumstances between the filings that suggests a second filing was appropriate and that the debtor will be able to comply with the terms of the chapter 13 plan; 3) whether the two filings accomplish a result that is not permitted in either chapter standing alone; and 4) whether the two filings treat creditors in a fundamentally fair and equitable manner or whether they are rather an attempt to manipulate the bankruptcy system or are an abuse of the purpose and spirit of the Bankruptcy Code. *In re Davis*, 447 B.R. at 750.

At the May 18, 2011, hearing the Debtors made a proffer as to good faith. Mr. and Mrs. Jennings are retired. The Jennings are no longer employable and the couple lives on social security and retirement income. The Jennings '07 Case failed because while they were receiving social security and retirement benefits for Mr. Jennings, they anticipated receiving social security benefits for Mrs. Jennings. Mrs. Jennings's social security benefits did not materialize in time. Additionally in the '07 Case, the Jennings had cosigned on a car loan which their son was supposed to make payments on, but did not; and they fell behind on the car payments. The Jennings have now surrendered that car. Their present chapter 13 case is feasible because among other things, they received a loan modification on their first mortgage and Mrs. Jennings now receives social security benefits. If they are able to fund the payments on their new car through their chapter 13 plan rather than at the contractual rate, they will have a workable budget.

Mr. and Mrs. Hill's '09 Case failed because they were trying to keep their primary residence as well as two rentals properties. The rental income from the rental properties did not materialize and the Hills fell behind on their payments. The Hills have now surrendered their rental properties. Additionally, Mr. Hill has a better paying job and Mrs. Hill now has more stable employment.

In response to the Debtors' good faith proffer, the Trustee notes that there does not seem to be a change of circumstances with respect to the Debtors' schedules I and J between the chapter 7 cases and the present chapter 13 cases. The Jennings '07 Case schedules show very similar income on schedule I as in their current chapter 13 schedules. Specifically, the Jennings received their chapter 7 discharge, bought a new car, and then filed chapter 13. Likewise, the Hills have almost the same income in the present chapter 13 case as they did in the '09 Case.

*Conclusion*

The Court holds that if the plan is filed in good faith, a chapter 20 debtor may strip off the lien of a wholly underwater second mortgage in a chapter 13 plan. However the subject plans in the Jennings and Hill cases are not presently confirmable because they do not treat the claims of the wholly underwater second mortgage holders (Lendmark and Wells Fargo respectively) as unsecured claims. Accord-

ingly, the Court **DENIES** plan confirmation in the Jennings and Hill cases, without prejudice to amend to comport with the Court's ruling.

The Clerk's Office is directed to serve a copy of this Order on the Debtors, Debtors' Counsel, the Chapter 13 Trustee, and all parties in interest.