In re Phillip Leslie FRAZIER
and Jennifer Jo Frazier,
Debtors/Appellees,

v.

REAL TIME RESOLUTIONS,
INC., Creditor/Appellant.

No. 2:11–cv–00290–MCE.

United States District Court,
E.D. California.

March 9, 2012.

Susan Jean Dodds, Scott A. Coben, Scott A. Coben and Associates, Sacramento, CA, for Debtors/Appellees.

Melissa Anne Vermillion, Cassandra J. Richey, Prober & Raphael, Woodland Hills, CA, for Creditor/Appellant.

*MEMORANDUM AND ORDER*

MORRISON C. ENGLAND, JR., District Judge.

Real Time Resolutions, Inc. ("Appellant"), appeals from the Bankruptcy Court's order approving the removal of Appellant's junior lien on debtors Phillip and Leslie Frazier's ("Appellees") primary residence and confirming Appellees' Chapter 13 plan. The main issue presented by this appeal is one that has been addressed by multiple bankruptcy courts since the collapse of the housing market: whether a Chapter 13 debtor can "strip-off" a wholly

unsecured secondary or junior lien on the debtor's principal residence when the debtor is ineligible for discharge because of a prior Chapter 7 discharge pursuant to 11 U.S.C. § 1328(f)(1).

The Bankruptcy Court's decision joins the growing split of authority among bankruptcy courts across the country on this same issue. For the reasons set forth below, the Bankruptcy Court's decision is affirmed.[1]

**BACKGROUND**

On August 3, 2009, Appellees filed a voluntary Chapter 13 bankruptcy petition. On August 17, 2009, Appellees' Chapter 13 petition was converted into a Chapter 7 case. At that time, Appellees were not eligible to proceed under Chapter 13 because their scheduled, unsecured debts exceeded the debt limits imposed by 11 U.S.C. § 109(e). Appellees indicated that there were two outstanding mortgage liens secured by their primary residence, located at 5610 Illinois Avenue, Fair Oaks, California, 95628 ("subject property").

Appellees received a Chapter 7 discharge on December 21, 2009, which relieved them of in personam liability for those mortgage liens securing the subject property; however, the in rem liability on the subject property remained intact. Accordingly, the senior and junior lien holders' state law lien rights in the subject property "rode through" the Chapter 7 discharge and the mortgage liens became non-recourse debts.

On December 30, 2009, Appellees filed a Chapter 13 petition to address the outstanding liens secured by the subject property, arrears, priority tax debt and other unsecured claims. (Excerpt of Record ("ER"), ECF No. 19 at 9.) Courts colloquially refer to this type of situation as a

---

1. Because oral argument will not be of material assistance, the Court deemed this matter suitable for decision without oral argument. *See* E.D. Cal. Local Rule 230(g).

"Chapter 20" case.[2] In Chapter 20 cases, the debtors file for Chapter 7 bankruptcy, receive a Chapter 7 discharge, and then file for Chapter 13 bankruptcy.[3] Appellees admitted that one of the reasons they filed the second Chapter 13 petition was to stay a foreclosure action commenced by senior lien holder, Bank of America ("BOA"), against the subject property. (*Id.* at 110–11.)

Schedule D of Appellees' Chapter 13 plan lists BOA as the senior lien holder of the First Deed of Trust for the amount of $275,681.00, secured by the subject property. (*Id.* at 33.) Schedule D also lists BOA as the junior lien holder of the Second Deed of Trust for $47,400.00, again secured by the subject property. (*Id.*)

On January 6, 2010, Appellant filed a proof of claim for $53,591.82, representing the principal, interest, and late fees owed on the Second Deed of Trust ("junior lien") on the subject property. (*Id.* at 61–63.) Appellant identified itself as the loan servicer for BOA's junior lien on the subject property. (*Id.*)

The Chapter 13 plan proposed to pay BOA, the senior lien holder, as a class-one creditor holding a "secured claim" pursuant to 11 U.S.C. § 506(a)(1). (*Id.* at 115.) Appellees' plan proposed to treat Appellant as a class-two creditor holding an "unsecured claim" and to avoid Appellant's junior lien on the subject property on the theory that there was not equity to which its lien could attach. (*Id.* at 56.)

In order to remove Appellant's junior lien, Appellees filed a Motion to Value Appellant's claim against the value of the subject property pursuant to 11 U.S.C. § 506(a)(1). Section 506(a)(1) classifies a creditor's allowed claim as a "secured allowed claim" or "unsecured allowed claim." *See* 11 U.S.C. § 506(a)(1). After a claim is classified by 506(a)(1), a debtor can propose to modify the rights of certain holders of unsecured allowed claims pursuant to 11 U.S.C. § 1322(b)(2).

In their Motion to Value, Appellees listed the value of the subject property as $240,000.00.[4] (*Id.* at 60.) Appellant objected to Appellees' Motion to Value and to the confirmation of Appellees' Chapter 13 plan, arguing that Appellees could not strip Appellant's junior lien because they were not eligible to receive a Chapter 13 discharge pursuant to 11 U.S.C. § 1328(f)(1).[5] (*Id.* at 64–68.) Section

---

**2.** The Supreme Court has expressly held that the Bankruptcy Code allows debtors to file Chapter 20 cases. *Johnson v. Home State Bank*, 501 U.S. 78, 87, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) (holding a debtor could file a Chapter 13 after a Chapter 7 because the Bankruptcy Code did not prohibit it and Congress specifically prohibited other types of consecutive filings, therefore its choice not to prohibit it meant that this type of filing was allowed).

**3.** The Bankruptcy Court in this case aptly described the strategy behind "Chapter 20" filings:

"[p]rior to the enactment of . . . [the Bankruptcy Abuse Prevention and Consumer Protection Act] . . . a Chapter 20 was a useful tool for a debtor who exceeded the monetary limits for a Chapter 13 case. *See* 11 U.S.C. § 109(e). By filing the Chapter 7

case to discharge unsecured indebtedness, debtors could reduce their debts to be within the monetary limits for the filing a subsequent Chapter 13 case. Then, through the subsequent Chapter 13 plan, debtors could save their residence from foreclosure by curing any arrearage through the plan or establish a court enforced repayment plan for nondischargeable debt, such as tax obligations."

*In re Frazier*, 448 B.R. 803, 807 (Bankr. E.D.Cal.2011)

**4.** No parties opposed Appellees' valuation of the subject property.

**5.** Section 1328(f)(1) provides, in pertinent part, "the court shall not grant a discharge of all debts provided for in the plan or disallowed under section 502, if the debtor has received a discharge . . . (1) in a case filed

1328(f)(1) renders debtors who have received a Chapter 7 bankruptcy in the past four years ineligible to receive a Chapter 13 discharge. Both Appellant and Appellees filed extensive briefing with the Bankruptcy Court concerning Appellant's objections. (*See id.* at 88–129.)

The Bankruptcy Court overruled Appellant's objections and confirmed Appellees' Chapter 13 Plan. (*Id.* at 174, 194.) The Bankruptcy Court found that BOA's senior lien securing an obligation of $275,681.00 exhausted all of the value in the subject property. (*Id.* at 190.) Accordingly, the Bankruptcy Court determined that Appellant's junior lien was a wholly unsecured allowed claim under § 506(a)(1), and the value of its unsecured claims as $53,591.82. (*Id.*)

The Bankruptcy Court also rejected Appellant's contention that the amendment to 11 U.S.C. § 1325(a)(5) mandates discharge to effectuate a lien strip, or instead, mandates payment of both the secured and unsecured portions of its claim. (*Id.* at 188–89.) Relying on the Supreme Court's decision in *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) and *Zimmer v. PSB Lending Corp. (In re Zimmer),* 313 F.3d 1220 (9th Cir.2002), the Bankruptcy Court held that a creditor attempting to assert rights under 11 U.S.C. § 1325(a)(5) must be a holder of an allowed secured claim under § 506(a)(1). (ER at 189.) Since Appellant did not hold a secured claim under § 506(a)(1), it did not have a basis for asserting rights under § 1325(a)(5). (*Id.*)

The Bankruptcy Court rejected Appellant's argument that a lien may only be stripped upon discharge. (*Id.* at 187.) In an effort to explain how the case would end in light of the lack of discharge in

Appellees' Chapter 20 case, the Bankruptcy Court likened Appellees' Chapter 13 plan to a contract between Appellees and the creditors. (*Id.* at 187.) Specifically, the Bankruptcy Court stated, "[i]t is the Chapter 13 plan, by which the debtor commits him or herself to a plan, which becomes the new contract between debtors and creditors." (*Id.* [citing *In re Than,* 215 B.R. 430 (9th Cir. BAP 1997) ] ). The Bankruptcy Court explained that the debtor must pay the full amount of the § 506(a) secured claim held by BOA through the Chapter 13 plan, resulting in there being no outstanding obligation secured by the lien. (*Id.*) Then, upon completion of the plan, the debtor demands reconveyance of the deed of trust or release of the lien . . . .," from BOA as senior lien holder and Appellant, as junior lien holder. (*Id.*) As to the close of the case, the Bankruptcy Court noted, "[i]t is completion of the plan and performance under the new contract created under the Bankruptcy Code which results in the debtors having the right to demand and receive the release of the lien. The granting or denying of discharge does not alter or remove the lien, and it not ... [a] basis for the court to denying [sic] a motion to value a creditor's secured claim." (*Id.*)

Finally, the Bankruptcy Court, on several grounds, overruled Appellant's objection that Appellees' Chapter 13 plan was not filed in good faith. First, the Bankruptcy Court overruled Appellant's objections based on § 1325(a)(5), as discussed above. (*Id.* at 190.) Second, the court overruled Appellant's objection to Appellees' projected monthly personal and business expenses outlined in the Chapter 13 plan. (*Id.* at 191.) Third, the Bankruptcy Court overruled Appellant's objections that because Appellees' Chapter 13 plan was filed

under Chapter 7, 11, or 12 of this title during the 4–year period preceding the date of the

order for relief under this Chapter...." 11 U.S.C. § 1328(f)(1).

on the heels of their previous Chapter 7 discharge, Appellees' Chapter 13 was filed in bad faith. (*Id.* at 194.) To this end, the Bankruptcy Court addressed the purpose of Appellees' Chapter 13 plan and conducted a good faith analysis of the Chapter 13 plan. (*Id.* at 192–93.) In conclusion, the Bankruptcy Court found that Appellees' Chapter 13 plan had been proposed in good faith and was not forbidden by any law. (*Id.* at 194.) Importantly, the Bankruptcy Court also found that Appellees' Chapter 13 plan complies "with the provisions of 11 U.S.C. § 1322 for the contents of the plan and 11 U.S.C. § 1325(a) and (b) for confirmation of the plan proposed in this case." *Id.*

On January 25, 2011, Appellant filed the Notice of Appeal with the U.S. Bankruptcy Appellate Panel of the Ninth Circuit. (*Id.* at 196–197.) On January 31, 2011, Appellees transferred the appeal to this Court pursuant to 28 U.S.C. § 158. (*Id.* at 198.)

## STANDARD

An appellant may petition the district court for review of a bankruptcy court's decision. Fed. R. Bankr.P. 8013. The applicable standard of review is identical to that employed by circuit courts of appeal in reviewing district court decisions. *See Heritage Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir.1997). Thus, legal conclusions are reviewed on a de novo basis, and factual determinations are assessed pursuant to a "clearly erroneous" standard. *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 792 (9th Cir.1997) (en banc).

 Findings of fact are "clearly erroneous" only if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *In re Marquam Inv. Corp.*, 942 F.2d 1462, 1466 (9th Cir.1991) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Appellant has the burden of proving such error has been committed, and the reviewing court should not reverse simply because another decision could have been reached. *In re Windor Indus., Inc.*, 459 F.Supp. 270, 275 (N.D.Tex.1978).

## ANALYSIS

Real Time's appeal rests on two arguments: (1) the Bankruptcy Court erred in determining that Appellees could remove Appellant's lien without obtaining a Chapter 13 discharge, and (2) the Bankruptcy Court erred in entering an order confirming Appellees' Chapter 13 Plan when Appellant's claim was not treated in the proposed Chapter 13 Plan. (Appellant's Opening Brief, ECF No. 17 at 8–9.)

### A. Removal of Lien Without a Chapter 13 Discharge

The central issue on appeal presents a question of law addressed by conflicting court decisions concerning the interplay between various provisions of the Bankruptcy Code affecting "Chapter 20" bankruptcy cases, including provisions modified by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

Put simply, the issue presented by cases of this nature is whether a Chapter 20 debtor may strip a wholly unsecured, inferior mortgage lien off the debtor's primary residence in a Chapter 13 case filed less than four years after having received a Chapter 7 discharge. More specifically, the issue is whether a debtor, who has been discharged of in personam liability for a home mortgage debt by receiving a Chapter 7 discharge, may then modify the in rem rights of the holder of the mortgage debt by removing the lien through a Chapter 13 plan even though the debtors are ineligible for discharge, and if so, under what circumstances.

Accordingly, there is a growing split of authority among courts across the country regarding the permissibility and permanence of Chapter 20 lien stripping. This issue is a divisive one in many jurisdictions, including California. *Compare In re Hill,* 440 B.R. 176 (Bankr.S.D.Cal.2010) and *In re Tran,* 431 B.R. 230 (Bankr. N.D.Cal.2010) (both finding that Chapter 20 lien stripping is permissible and permanent upon plan completion and a finding of good faith) *with In re Victorio,* 454 B.R. 759, 2011 WL 2746054 (Bankr.S.D.Cal. July 8, 2011) and *In re Winitzky,* 2009 Bankr.LEXIS 2430 (Bankr.C.D.Cal. May 7, 2009) (both finding that Chapter 20 lien stripping is impermissible in absence of discharge). The split of authority can be grouped into three approaches. *See In re Jennings,* 454 B.R. 252, 256–57 (Bankr. N.D.Ga.2011) (explaining the three approaches).

Courts adopting the first approach "allow Chapter 20 lien stripping because nothing in the Bankruptcy Code prevents it." [6] *Id.* These courts contend that the

mechanism that voids the lien is plan completion, and that Chapter 20 cases end in administrative closing—not discharge. *Id.*

Courts that adopt the second approach allow Chapter 20 lien stripping; however, after plan consummation, without a discharge, the parties' pre-bankruptcy rights are reinstated. [7] *Id.* These courts assert that a Chapter 13 discharge is required to void the lien, and that Chapter 20 plans end in dismissal because they are ineligible for discharge. *Id.*

Courts utilizing the third approach "hold that Chapter 20 lien stripping is impermissible because it amounts to a de facto discharge," which is prohibited by 11 U.S.C. § 1328(f)(1). [8] *Id.* These courts rely on an interpretation of the Supreme Court case *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), and Congress' inclusion of a discharge requirement in 11 U.S.C. § 1325(a)(5).

For the reasons that follow, the Court agrees with those courts adopting the first approach, which hold that a wholly unse-

**6.** *See In re Hill,* 440 B.R. 176; *In re Tran,* 431 B.R. 230 (Bankr.N.D.Cal.2010); *In re Okosisi,* 451 B.R. 90 (Bankr.D.Nev.2011); *In re Fisette,* 455 B.R. 177 (8th Cir. BAP 2011); *In re Scotto–DiClemente,* 459 B.R. 558 (Bankr. D.N.J. Nov. 18, 2011); *In re Miller,* 462 B.R. 421 (Bankr.E.D.N.Y. Dec. 15, 2011); *In re Gloster,* 459 B.R. 200 (Bankr.D.N.J.2011); *In re Sadowski,* 2011 WL 4572005 (Bankr. D.Conn. Sept. 30, 2011); *In re Jennings,* 454 B.R. 252 (Bankr.N.D.Ga.2011); *In re Fair,* 450 B.R. 853 (E.D.Wis.2011); *In re Waterman,* 447 B.R. 324 (Bankr.D.Colo.2011); *In re Davis,* 447 B.R. 738 (Bankr.D.Md.2011).

**7.** *See In re Casey,* 428 B.R. 519 (Bankr. S.D.Cal.2010); *In re Trujillo,* 2010 WL 4669095 (Bankr.M.D.Fla. Nov. 10, 2010); *In re Colbourne,* 2010 WL 4485508 (Bankr. M.D.Fla. Nov. 8, 2010); *Hart v. San Diego Credit Union,* 449 B.R. 783 (Bankr.S.D.Cal. 2010); *In re Jazo,* 2010 WL 3947303 (Bankr. S.D.Cal. Sept. 28, 2010); *In re Davis,* 447 B.R. 738 (Bankr.D.Md.2011).

**8.** *See In re Victorio,* 454 B.R. 759, 2011 WL 2746054 (Bankr.S.D.Cal. July 8, 2011); *In re Winitzky,* 2009 Bankr.LEXIS 2430 (Bankr. C.D.Cal. May 7, 2009); *In re Gerardin,* 447 B.R. 342 (Bankr.S.D.Fla.2011) (holding that Chapter 20 debtor could not avoid lien because of ineligibility for discharge); *In re Fenn,* 428 B.R. 494 (Bankr.N.D.Ill.2010) (holding that by virtue of Section 1325(a)(5) holder of secured claim retains the lien until the underlying debt is paid in full or discharged); *In re Orkwis,* 457 B.R. 243 (Bankr. E.D.N.Y.2011); *In re Jarvis,* 390 B.R. 600 (Bankr.C.D.Ill.2008) (finding discharge a necessary prerequisite to permanency of lien avoidance); *In re Lilly,* 378 B.R. 232, 236–37 (Bankr.C.D.Ill.2007) (holding that by virtue of Section 1325(a)(5) holder of secured claim retains the lien until the underlying debt is paid in full); *In re Lindskog,* 451 B.R. 863 (Bankr.E.D.Wis.2011); *In re Erdmann,* 446 B.R. 861 (Bankr.N.D.Ill.2011); *In re Mendoza,* 2010 WL 736834 (Bankr.D.Colo. Jan. 21, 2010); *In re Blosser,* 2009 WL 1064455 (Bankr.E.D.Wis. Apr. 15, 2009).

cured junior lien on the debtor's principal residence may be removed in Chapter 20 action despite the operation of § 1328(f)(1). Therefore, the Court affirms the Bankruptcy Court's decision.

The determination of whether Appellees' Chapter 13 plan may remove Appellant's junior lien necessitates analysis of the interplay between §§ 506(a)(1), 1322(b)(2) and 1328(f)(1) of the Bankruptcy Code. Thus, the Court's analysis beings with a discussion of those provisions of the Bankruptcy Code.

### 1. Secured and Unsecured Claims Under 11 U.S.C. § 506(a)(1)

■ Whether Appellees' Chapter 13 plan may remove Appellant's lien dependent on its § 506(a)(1) classification. Section 506(a)(1) classifies the holder of an allowed claim as a holder of an "allowed *secured* claim" or an "allowed *unsecured* claim." 11 U.S.C. § 506(a)(1) (emphasis added). Classification as the latter renders stripping of the lien impermissible. The 506(a)(1) classification is based on the value of the underlying collateral:

> "An allowed claim of a creditor secured by a lien on property . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim."

*Id.* Section 506(a) also bifurcates an *undersecured* creditor's claim into two parts: a secured claim to the extent of the value of the collateral and an unsecured claim for the balance of the claim. *In re Fair*, 450 B.R. 853, 855 (E.D.Wis.2011) (emphasis added).

■ Holding an allowed secured claim under the Bankruptcy Code is not necessarily synonymous with holding a security interest outside of bankruptcy. *See In re Zimmer*, 313 F.3d at 1223. "Secured claim" is a term of art within the Bank-

ruptcy Code and means something different than it does for a creditor to have a security interest or lien outside of bankruptcy. *Id.; In re Okosisi*, 451 B.R. 90, 93 (Bankr.D.Nev.2011). Outside of bankruptcy, if a creditor has a valid security interest, regardless of the collateral's value, it may be thought of as a secured creditor. *Id.* Conversely, in bankruptcy, a creditor is only a secured creditor if its claim is classified under § 506(a)(1). *Id.* If the claim is not a "allowed secured claim," the once-secured creditor will have an unsecured claim for purposes of the bankruptcy proceedings. *Id.* This leads to the counterintuitive possibility that in bankruptcy, a creditor holding a wholly unsecured allowed claim is classified as a holder of an "allowed unsecured claim" in the Chapter 13 plan, but also has "rights" of a secured creditor outside of bankruptcy. *Id.*

■ In this case, BOA's senior lien for $275,681.00 exhausted all the $240,000.00 of value in the subject property.

Thus, there is zero value in the subject property for Appellant's junior lien to attach, rendering Appellant's claim a wholly unsecured allowed claim pursuant to § 506(a)(1).

### 2. Lien Stripping and Chapter 13

The status of Appellant's unsecured allowed claim dictates whether or not Appellees' Chapter 13 plan can remove Appellant's junior lien. Section 1322(b)(2) of the Bankruptcy Code allows Chapter 13 debtors to modify the rights of creditors holding both secured and unsecured claims. *See* 11 U.S.C. § 1322 (directing that a Chapter 13 plan may "modify the rights of holders of secured claims . . . or of holders of unsecured claims"). Thus, in limited scenarios, § 1322 can be used to effectuate a lien strip of both unsecured and secured claims in a Chapter 13 plan. *Id.*

Congress has placed certain restrictions on the ability of consumer debtors to impact the rights of holders of mortgage liens under § 1322(b)(2), which prohibits a Chapter 13 debtor from modifying the rights of a holder of a secured mortgage debt if the mortgage debt is secured by a lien against the debtor's principal residence. *See In re Miller*, 462 B.R. 421, 426 (Bankr.E.D.N.Y.2011). This prohibition has come to be known as the "antimodification provision," and has given rise to substantial litigation over the extent to which §. 1322(b)(2) applies. *Id.*

In *Nobelman v. American Savings Bank*, the Supreme Court addressed the issue of "whether § 1322(b)(2) prohibits a [C]hapter 13 debtor from relying on § 506(a) to reduce an *undersecured* homestead mortgage to fair market value of the mortgage residence." 508 U.S. at 325–26, 113 S.Ct. 2106 (emphasis added). There, the debtors—the Nobelmans—executed an adjustable rate note for $68,250.00 to purchase their primary residence. *Id.* at 326, 113 S.Ct. 2106. The note was secured by a deed of trust. *Id.* The Nobelmans filed Chapter 13 after falling behind on mortgage payments. *Id.* The bank holding the deed of trust filed a proof of claim for $71,335.00 in principal, interest, and fees owed on the note. *Id.* The Nobelmans' Chapter 13 plan valued their primary residence at a mere $23,500 and proposed to bifurcate the bank's claim into two parts, pursuant to § 506(a)(1): a secured claim for $23,500.00 and an unsecured claim for the remaining amount on the note. *Id.* In other words, the debtors proposed to "strip-down" the bank's undersecured claim to the fair market value of the home—$23,500. *Id.* Accordingly, the Nobelmans proposed to only pay the bank $23,500 and remove the residual, unsecured portion of the lien. *Id.*

After reviewing the statutory language and applicable case law, the Court held that a Chapter 13 debtor cannot strip-down a partially unsecured residential mortgage lien secured by the debtor's principal residence. *Id.* at 332, 113 S.Ct. 2106. The Supreme Court confirmed that the appropriate starting point to determine whether a lien strip-down or strip-off is appropriate is through application of § 506(a)(1). *Id.* at 328, 113 S.Ct. 2106 (finding specifically that "[p]etitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim.") (internal citations omitted). The Supreme Court read the language "a claim secured only by a security interest in real property" to refer "to the lienholder's entire claim, including both the secured and unsecured components of the claim." *Id.* at 331, 113 S.Ct. 2106 (interpreting § 1322(b)(2) to prohibit a residential mortgage lien from being stripped down to the value of the collateral). The Court held that as long as there is some value in the collateral to which the lien could attach, the entire lien was protected under § 1322(b) (2).

In 1997, the Ninth Circuit Bankruptcy Appellate Panel addressed a corollary question not at issue in *Nobelman:* whether the holder of a mortgage against a Chapter 13 debtor's residence which is wholly unsecured is entitled to the protections of the antimodification provisions of § 1322(b)(2), or whether the rights of such a mortgage holder can be modified by treating the claim as an unsecured claim in the debtor's plan. *In re Lam*, 211 B.R. 36, 40 (9th Cir. BAP 1997). In Lam, the undisputed value of the Chapter 13 debtors' primary residence was $300,000.00. *Id.* at 38. The residence was encumbered by four mortgage liens totaling $803,239.00. *Id.* The debtors' Chapter 13 plan proposed to strip-off the fourth deed of trust for $17,193.00 on the theory that the lien was a wholly underwater, unse-

cured claim under § 506(a)(1). *Id.* The *Lam* panel held the antimodification provision protecting a loan secured by an interest in a debtor's principal residence, as set out in § 1322(b)(2), does not apply if there is no value to which the security interest could attach because the principal residence was already fully subsumed by the security interest of the senior lien holder. *Id.* at 40. In 2002, the Ninth Circuit followed *Lam* in *In re Zimmer,* 313 F.3d 1220. The *Zimmer* court held that the antimodification protection of § 1322(b)(2) only operates to benefit creditors who may be classified as allowed secured claim holders after operation of § 506(a)(1). *Id.* at 1226.

■ Thus, *In re Lam* and *In re Zimmer* instruct that the antimodification provision does not protect a creditor whose junior lien on a debtor's primary residence has been classified as an "unsecured claim" by § 506(a)(1). This logic is "compelled by the Supreme Court's decision in *Nobelman,*" and has been embraced by all six circuit courts that have considered the question. *See In re Okosisi,* 451 B.R. at 94 (citing *In re Zimmer,* 313 F.3d at 1227).[9]

Other courts addressing whether lien stripping is allowed in a Chapter 13 case also have considered 11 U.S.C. § 506(d) as a lien stripping mechanism; however, reliance on § 506(d) is misplaced. Section 506(d) provides that "[t]o the extent that a lien secured a claim against a debtor that is not an allowed secured claim, such a lien is void." 11 U.S.C. § 506(d). "In *Dewsnup v. Timm,* 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), the Supreme Court held that Section 506(d) only avoids a lien to the extent that the underlying claim was disallowed pursuant to 11 U.S.C. § 502." *In re Fair,* 450 B.R. at 856. Thus, *Dewsnup* prohibited lien stripping of Chapter 7 allowed claims. In light of *Dewsnup,* Section 506(d) is not the proper tool for lien stripping of allowed claims in Chapter 13. *Id.* (citing *In re Hill,* 440 B.R. at 181; *In re Fenn,* 428 B.R. at 500; *In re Gerardin,* 447 B.R. at 346). Regardless of 506(d)'s inapplicability, lien stripping is expressly and broadly permitted in the context of rehabilitative bankruptcy proceedings under Chapters 11, 12 and 13. *Id.* (citing *In re Bartee,* 212 F.3d 277, 291 n. 1 (5th Cir.2000)).

■ Accordingly, § 1322(b)(2) authorizes the removal of Appellant's wholly unsecured junior lien on the subject property in Appellees' Chapter 13 plan. Appellant's claim was classified as an unsecured allowed claim after operation of § 506(a)(1), thus, it does not qualify for the antimodification protection of § 1322(b)(2).

### 3. 2005 BAPCPA Amendments to the Bankruptcy Code

■ The prior discussion brings us to § 1328(f)(1), the crucial issue presented by this appeal.[10] Appellants argue the

---

9. *See In re Lane,* 280 F.3d 663, 667–69 (6th Cir.2002); *Pond v. Farm Specialist Realty (In re Pond),* 252 F.3d 122, 126 (2d Cir.2001); *In re Tanner,* 217 F.3d 1357, 1359–60 (11th Cir. 2000); *In re Bartee,* 212 F.3d 277, 288, 295 (5th Cir.2000); *In re McDonald,* 205 F.3d 606, 611 (3d Cir.2000). Bankruptcy Appellate Panels have also reached this same result. *See In re Griffey,* 335 B.R. 166, 167–68 (10th Cir. BAP 2005); *See In re Mann,* 249 B.R. 831, 836 (1st Cir. BAP 2000).

10. During the bankruptcy proceedings, Appellants argued that Appellees' Chapter 13 plan could not remove Appellant's junior lien because under 11 U.S.C. § 1325(a)(5), discharge is required to effectuate a lien-strip. Appellant has not raised this argument on appeal. In any event, the Court agrees with the Bankruptcy Court's decision finding § 1325(a)(5) is inapplicable to Appellant's allowed unsecured claim. Section 1325(a)(5) has no applicability to unsecured allowed claims, which are separately governed by the confirmation requirements of § 1325(a)(4).

Bankruptcy Court erred in confirming Appellees' Chapter 13 plan's removal of Appellant's junior lien because Appellees received a prior Chapter 7 discharge, and thus, they are ineligible to receive a Chapter 13 discharge. (*See generally* Appellant's Opening Brief, ECF No. 17 at 12, 14–15, 18–22.) As such, Appellants contend Appellees' Chapter 13 plan cannot remove their junior lien from the subject property because in the context of a Chapter 13 plan, discharge is required to effectuate a lien strip.

The 2005 amendments to the Bankruptcy Code affected changes to § 1328(f)(1) that has now caused courts to question whether the removal of an valueless junior lien in a Chapter 20 case remains possible. *See In re Gloster,* 459 B.R. 200, 204 (Bankr.D.N.J.2011). As previously noted, § 1328(f)(1) prohibits a Chapter 13 discharge if the debtor received a discharge in a Chapter 7, 11 or 12 cases in the four years preceding the date of the order for relief in the Chapter 13 case. *See* 11 U.S.C. § 1328(f)(1). This change allows debtors the benefit of a Chapter 13 automatic stay and a chance to work out a repayment plan with creditors but denies them the benefit of a Chapter 13 discharge.

Still, even with the inclusion of 11 U.S.C. § 1328(f)(1) with the BAPCPA, Congress was deliberate in only prohibiting discharge in a Chapter 20 case. The Bankruptcy Code does not specifically prohibit stripping off unsecured mortgage liens for a debtor who is ineligible to receive a discharge, even though such language could easily have been added. *See In re Gloster,* 459 B.R. 200, 204 ("Given the wide-ranging changes effected by BAPCPA, and its emphasis on ensuring that abusive use of bankruptcy protections not be permitted, it is significant that no changes were made to the Bankruptcy Code to disallow the strip-off of liens in

Chapter 20 cases."). As noted by the court in *In re Jennings,* "nothing in sections 506, 1322, 1325, 1327, or any other section of the Bankruptcy Code limits a Chapter 20 debtor's ability to take advantage of the protections Chapter 13 provides. Lien-stripping is one of the tools in the Chapter 13 toolbox. And use of the Chapter 13 lien stripping tool is not conditioned on discharge eligibility." 454 B.R. at 258 (*citing In re Hill,* 440 B.R. at 182; *In re Tran,* 431 B.R. at 235).

Further, the court in *In re Hill* argued that "to judicially impose a discharge requirement on the debtor's ability to strip a lien when none is required by statute cannot be reconciled with the Supreme Court's holding in *Johnson v. Home State Bank,* 501 U.S. 78, 87 [111 S.Ct. 2150]." 440 B.R. at 181–82. Specifically, "[i]n *Johnson,* the Court held 'Congress did not intend to categorically foreclose the benefit of Chapter 13 lien reorganization to a debtor who previously filed for Chapter 7 relief.'" *Id.* (internal citations omitted). "By its plain terms, § 1328(f) does not require another discharge when a later case is filed; it simply denies an untimely discharge in a later case." *Id.* (citing *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *In re Silverman,* 616 F.3d 1001, 1006 (9th Cir.2010) (explaining that statutory plain language must be respected)).

■ Put more simply, "denying certain [C]hapter 13 debtors the right to a discharge did nothing to change the fact that lien stripping is generally allowed under Chapter 13." *In re Fair,* 450 B.R. at 857. In many Chapter 13 cases, "it is the ability to reorganize one's financial life and pay off debts, not the ability to receive a discharge, that is the debtor's holy grail." *Id.* (citing *In re Bateman,* 515 F.3d 272, 283 (4th Cir.2008)). Accordingly, Con-

gress did not intend to prevent lien stripping through 1328(f)(1) and no discharge is required to effectuate a strip of a junior lien of a debtor's primary residence.

Applied here, § 1328(f)(1) does not affect Appellees' ability to strip Appellant's wholly junior lien in their Chapter 13 plan because nothing in the Bankruptcy Code prevents Chapter 20 debtors from stripping junior liens off their primary residence pursuant to §§ 506(a)(1) and 1322(b)(2). Section 1328(f)(1) only prohibits discharge, not lien stripping.

■ Instead of discharge, the Court agrees with the underlying Bankruptcy Court and finds plan completion is the appropriate end to Appellees' Chapter 20 case. The lien strip will become permanent not upon a discharge, as would happen in a typical Chapter 13 case, but upon completion of all payments as required by the plan. *See In re Blenheim,* 2011 WL 6779709 (Bankr.W.D.Wash. Dec. 27, 2011). The reasoning set forth in *In re Tran,* 431 B.R. 230 (Bankr.N.D.Cal.2010), is persuasive:

> [T]he Bankruptcy Code does not condition a chapter 13 debtor's right to strip off a wholly unsecured junior lien on the debtor's eligibility for a discharge. Rather, such right is conditioned on the debtor's obtaining confirmation of, and performing under, a chapter 13 plan that meets all of the statutory requirements.

431 B.R. at 235; *accord In re Hill,* 440 B.R. 176, 182 (Bankr.S.D.Cal.2010) ("[L]ien strips are permitted in Chapter 20 cases even without a discharge."); *In re Okosisi,* 451 B.R. at 100 ("[C]hapter 20 bankruptcy is permissible under the Code, and [debtors] may take advantage of all available chapter 13 restructuring tools," including lien stripping.); *In re Fisette,* 455 B.R. 177, 185 (8th Cir. BAP 2011) ("We hold that the strip off of a wholly unsecured lien on a debtor's principal residence ... is not contingent on his receipt of a Chapter 13 discharge"). Further, as noted by the court in *In Re Okosisi,*

> "[a]t the successful completion of all payments in a no-discharge chapter 13 case, no order discharging the debtor will be entered because the debtor is not eligible for a discharge ... [I]n this situation, the proper result is for the court to close the case without discharge.... Because the no-discharge case is closed without discharge, rather than dismissed, the code sections that reverse any lien avoidance actions contained within a chapter 13 plan upon conversion or dismissal are not implicated, and, thus, do not act to prevent the permanence of the lien avoidance.... Once a debtor successfully complete all plan payments required by a chapter 13 plan, the provisions of the plan become permanent, and the lien avoidance is, similarly permanent."

451 B.R. at 99–100 (noting that although, per *In re Leavitt,* 171 F.3d 1219, 1223 (9th Cir.1999), a Chapter 13 case can only end in one of three ways: conversion, dismissal, or discharge. BAPCPA's addition of § 1328(f) "opened up the possibility of a fourth option, the completion of all plan payments without a discharge"); *contra In re Victorio,* 454 B.R. 759, 761 (Bankr. S.D.Cal.2011) ("[D]ebtors in a Chapter 20 case cannot obtain a 'permanent' avoidance of a wholly unsecured junior lien on their principal residence unless they pay the claim amount in full, or obtain a discharge.").

■ Conversely, if a Chapter 13 case is dismissed or converted to a Chapter 7 prior to the successful completion of all plan payments, actions taken to avoid a lien are undone, and a junior lien holder's in rem rights would remain intact.

■ Importantly, in order for a Chapter 13 plan to be confirmed in this scenario, the plan must otherwise comply

with all other requirements for plan confirmation set forth in the Code. *See e.g. In re Tran,* 431 B.R. at 235 (permitting Chapter 20 lien stripping but requiring plan that otherwise "meets all of the statutory requirements"); *In re Hill,* 440 B.R. at 182 (permitting Chapter 20 lien stripping but requiring plan that "otherwise complies with the requirements of the Code"). "Once the lien is so avoided, the unsecured claim that is represented by this nonrecourse debt becomes an unsecured claim in the bankruptcy." *In re Okosisi,* 451 B.R. at 96. As the holder of an unsecured claim, the creditor whose lien was stripped "need only be paid its pro-rata share of Debtors' disposable income calculated under 707(b) and its pro-rata share of any equity in Debtors' assets." *In re Hill,* 440 B.R. at 183.

In Appellees' case, Appellant's lien will be permanently stripped upon plan completion and the case will end in administrative closing. Assuming Appellees complete their Chapter 13 plan, Appellant will receive a pro-rata distribution of Appellees' disposable income—which here, is zero— and a pro rata distribution of any assets remaining after completion of payments to creditors holding allowed secured claims and priority unsecured creditors. In the event that Appellees do not make all required Chapter 13 plan payments, Appellees' Chapter 13 plan would be converted to a Chapter 7 or dismissed. Appellant would then have the option to exercise its remaining in rem rights against the subject property recognized by state law.

Based on the foregoing, the Court affirms the Bankruptcy Court's holding that Appellees could remove Appellant's lien without obtaining a Chapter 13 discharge.

## B. Treatment of Appellant's Claim Under the Chapter 13 Plan

Appellant's second argument on appeal is that the Bankruptcy Court erred in confirming Appellees' Chapter 13 plan because Appellant's claim was not "treated" in the proposed Chapter 13 plan. (Appellant's Opening Brief, ECF No. 17 at 21.)

Appellant's argument is not the model of clarity. To paraphrase, Appellant argues that the Bankruptcy Court erred in confirming Appellees' Chapter 13 plan because new consideration was not provided as part· of the contract which arises out of Appellees' Chapter 13 plan.

Specifically, Appellant challenges the Bankruptcy Court's confirmation of Appellees' Chapter 13 plan arguing that Appellees did not provide "new consideration" to them as an unsecured creditor. (Appellant's Opening Brief, ECF No. 17 at 21, 23.) The Bankruptcy Court likened Appellees' Chapter 13 plan to a contract between Appellees and creditors, thus, Appellant is now demanding "new consideration" to support this "contract."

First, Appellant cites to no authority requiring new consideration to be provided to an unsecured creditor in order for a bankruptcy court to confirm a debtor's proposed Chapter 13 plan. Further, the Chapter 13 plan is authorized by the Bankruptcy Code, which does not require the concept of "new consideration" in order for a bankruptcy court to approve Appellees' Chapter 13 plan. Thus, Appellant's reliance on a California statute requiring consideration for a contract to be valid is misplaced. The Bankruptcy Code governs the contents and confirmation of Appellees' Chapter 13 plan, not California statutory or common law governing contracts. Further, the Bankruptcy Court found that Appellees' Chapter 13 plan was proposed in good faith and that the contents of the Chapter 13 plan complied with § 1322.

Appellant argues that Appellees' Chapter 13 plan should not have been confirmed because it does not meet one the requirements for plan confirmation—

§ 1325(a)(4). Appellant argues that the consideration required to support the contract can be found in 11 U.S.C. § 1325(a)(4) and that the court improperly found that Appellees' plan complied with § 1325(a)(4).

Section 1325 of the Bankruptcy Code sets out requirements a debtor must meet before the Bankruptcy Court can confirm a debtor's Chapter 13 plan. At issue here is § 1325(a)(4), which provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if . . .
(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1325(a)(4). This provision, known as the "best interest of creditors test," ensures that a Chapter 13 plan provides unsecured creditors with at least as much return as they would receive in a Chapter 7 liquidation. The application of the "best interests test" rests with the discretion of the Bankruptcy Court. *8 Collier on Bankruptcy*, (15th Ed. Revised), ¶ 1325.05, at 1325–17 (internal citations omitted). As the determination of whether a debtor's plan complies with § 1325(a)(4) is a factual finding, the Court reviews the Bankruptcy Court's determination under the clearly erroneous standard. *See Murray*, 131 F.3d at 792 (factual determinations are assessed pursuant to a "clearly erroneous" standard).

Appellant contends that Appellees' Chapter 13 plan fails under the liquidation analysis provided by § 1325(a)(4), and thus, does not provide "consideration" to support the new contract proposed by Appellees' Chapter 13 plan. (Appellant's Opening Brief, ECF No. 17 at 23–24.)

Specifically, Appellant contends that in the event of a Chapter 7 liquidation at this juncture, Appellee would owe Appellant the full amount of Appellant's outstanding claim of $53,591.82. Accordingly, Appellant contends Appellees' plan fails to meet § 1325(a)(4) because the Chapter 13 plan anticipates a 0.00% payment to unsecured creditors like Appellants. (*Id.*)

To the contrary, the Bankruptcy Court specifically found that Appellees' Chapter 13 plan complied with the plan confirmation requirements set forth in § 1325(a) and (b). (ER at 194 (emphasis added).) The Court agrees with the Bankruptcy Court's finding that Appellees' Chapter 13 plan met the § 1325(a)(4) requirement. Specifically, if Appellees filed for Chapter 7 liquidation, BOA and Appellant would retain their in rem rights against the subject property which would allow them to foreclose on Appellant's property. BOA's senior lien for $275,681.00 would fully exhaust the value of the subject property. Thus, in a hypothetical liquidation, the value of Appellant's junior lien and in rem rights is $0.00. Accordingly, the Court finds the Bankruptcy Court's finding that § 1325(a)(4) was not clearly erroneous.

As to Appellant's claim that it is not treated at all in Appellees' Chapter 13 plan, that argument is disingenuous. Appellant holds an unsecured allowed claim and its claim is subject to modification of its rights under § 1322(b)(2). As the holder of an unsecured claim under § 1325(b)(4), Appellant need only be paid its pro rata share of Appellees' disposable income calculated under § 707(b), along with its pro rata share of any equity in Appellees' assets. Since § 1322(a)(3) requires that claims within the same class be treated in the same manner, Appellant is "entitled to be paid whatever [is paid generally to unsecured creditors], the prior chapter 7 discharge notwithstanding." *In*

*re Gounder,* 266 B.R. 879, 881 (Bankr. E.D.Cal.2001).

Thus, to the extent that Appellant argues that its claim is not "treated" in Appellees' Chapter 13 plan, the Court finds its position untenable. Appellees' Chapter 13 plan provides for Appellant's claim and treats Appellant as a creditor holding an allowed unsecured claim. Accordingly, the Court affirms the Bankruptcy Court's decision to confirm Appellees' Chapter 13 Plan.

## CONCLUSION

The Bankruptcy Court did not err in confirming Appellees' Chapter 13 plan and approving the removal of Appellant's junior lien, despite the fact Appellees were ineligible for discharge pursuant to § 1328(f)(1). Section 1328(f)(1) only prohibits a Chapter 20 debtor from obtaining a discharge, not from removing a wholly unsecured, junior lien from a debtor's primary residence. Last, the Bankruptcy Court did not err in confirming Appellees' Chapter 13 plan despite Appellant's treatment as an unsecured creditor. As previously noted, Appellant was classified as holder of an unsecured allowed claim pursuant to § 506(a)(1) and will receive a pro rata distribution of Appellees' available disposable income and in any remaining equity in Appellees' available assets at the end of Appellees' plan. The Court also agrees with the Bankruptcy Court that Appellees' Chapter 13 case with end upon plan completion. Accordingly, the Bankruptcy Court's decision is affirmed. The Clerk of the Court is directed to close the file.

IT IS SO ORDERED.